903 F.2d 480
 29 Soc.Sec.Rep.Ser. 556, Medicare&Medicaid Gu 38,534
BODIMETRIC HEALTH SERVICES, INCORPORATED, Bodimetric Home
Health Care, Incorporated and American Service
Bureau, Incorporated,
Plaintiffs-Appellants and
Cross-Appellees,
v.
AETNA LIFE & CASUALTY, Defendant-Appellee,
United States of America, Intervenor-Cross-Appellant.
 Nos. 89-1428, 89-1570.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 15, 1989.
Decided May 25, 1990.
As Amended June 5, 1990.
 
 Barbara S. Steiner, Theodore Tetzlaff, Jenner & Block, Chicago, Ill., Leonard C. Homer, Carel T. Hedlund, David B. Hamilton, Ober, Kaler, Grimes & Shriver, Baltimore, Md., George Koelzer, Ober, Kaler, Grimes & Shriver, New York City, for plaintiffs-appellants and cross-appellees.
 Jack R. Bierig, David F. Graham, Robert M. Portman, Sidley & Austin, Chicago, Ill., for defendant-appellee.
 Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., Anthony J. Steinmeyer, Peter P. Maier, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for intervenor.
 Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Bodimetric Health Services ("Bodimetric")[1] brought suit against Aetna Life & Casualty ("Aetna") for improperly denying reimbursement claims made under the Medicare Act, 42 U.S.C.A. section 1395 et seq. (West Supp.1990). Aetna defended itself with a motion to dismiss for lack of subject matter jurisdiction, alleging that the exclusive review mechanisms of the Medicare Act barred Bodimetric from pursuing its challenge in federal court. The district court granted Aetna's motion. The question on appeal is whether the allegedly improper application of "exclusive" review mechanisms to Bodimetric's claim is actionable in the district court. We affirm.
 
 I.
 
 2
 The facts of this case--as well as the underlying statutory provisions--are ably recited in the district court opinion. Bodimetric Health Servs. v. Aetna Life & Casualty, 706 F.Supp. 619 (N.D.Ill.1989). We pause here only to note some of the more pertinent details involved in this appeal.
 
 
 3
 Bodimetric owned and operated fifteen home health agencies ("HHAs") that provided in-home medical services as an alternative to institutional treatment. All fifteen of these HHAs were certified as Medicare providers. Under Part A of the Medicare Act,[2] these HHAs generally are reimbursed for the lesser of their reasonable costs (in providing treatment) or customary charges for rendering services. 42 U.S.C. Sec. 1395f(b) (1982). To obtain reimbursement from so-called "fiscal intermediaries,"[3] section 1395f(a)(2)(C) requires a physician to certify that services are necessary, that the individual is confined to the home and that a plan of treatment has been developed. 42 U.S.C.A. Sec. 1395f(a)(2)(C) (West Supp.1990). Before 1984, the Health Care Financing Administration's Office of Direct Reimbursement ("ODR") acted as fiscal intermediary to Bodimetric by processing Bodimetric's claims under these provisions of the Act; apparently, ODR rarely denied any of Bodimetric's claims.
 
 
 4
 In 1984, the Health Care Financing Administration determined that ODR could no longer serve as Bodimetric's fiscal intermediary. In this situation, the provisions of the Medicare Act permit an HHA to nominate a public or private agency to act as fiscal intermediary. 42 U.S.C.A. Sec. 1395h (West Supp.1990). Bodimetric relied upon these provisions to nominate Aetna as its fiscal intermediary. Aetna, at first, provided reimbursement for virtually all of Bodimetric's claims. In early 1985, however, Bodimetric alleges that the Department of Health and Human Services released a contractor evaluation critical of Aetna's performance as a fiscal intermediary. Because of this evaluation, Bodimetric charges, Aetna adopted a more restrictive approach that led to the denial of a substantial number of HHA claims. Plaintiffs' Complaint pp 23-24. "The purpose of Aetna's [new approach] was to raise its denial rate, and hence improve its contract performance evaluation, so that it could retain its contract with HCFA as a fiscal intermediary." Appellants' Brief at 8-9.
 
 
 5
 Officials of Aetna agreed to meet with officials of Bodimetric to discuss the denial of the claims. Bodimetric alleges that Aetna used these meetings to lull Bodimetric into believing that the denials were atypical while it continued to deny thousands of claims without regard to their underlying substance. In support of this charge, Bodimetric asserts that administrative law judges have reversed almost all of Aetna's denials where Bodimetric has entered an appearance and argued for reversal. Bodimetric, 706 F.Supp. at 623.
 
 
 6
 Aetna's arbitrary campaign of denials, according to Bodimetric, led to the closing of Bodimetric's HHAs and, as a result, caused Bodimetric to lose more than 8 million dollars. Consequently, Bodimetric filed suit in district court seeking damages due to Aetna's alleged fraud, fraudulent concealment, negligent misrepresentation, breach of contractual relationship, breach of third-party beneficiary relationship, tortious breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, liability for intended consequences, intentional harm to property interest and violations of civil RICO. Aetna successfully moved for dismissal, noting that the district court did not have subject matter jurisdiction to consider the case.
 
 II.
 
 7
 A. The Underlying Regulatory and Statutory System of Review
 
 
 8
 Congress provided elaborate review provisions to be used by parties dissatisfied with the initial disposition of their Medicare claims. See 42 U.S.C.A. Secs. 405(h), 1395ff (1982 & West Supp.1990). If a fiscal intermediary determines that certain HHA provided services are not "reasonable and necessary for the diagnosis or treatment of illness or injury," or otherwise are not covered by Medicare, the affected HHA may request reconsideration by the fiscal intermediary. 42 C.F.R. Secs. 405.710(b), 405.711 (1988). Should this avenue prove unsuccessful, the provider (assuming the claim exceeds $100) may argue its case to an administrative law judge, 42 C.F.R. Sec. 405.720 (1988), and may request an additional review by the Appeals Council. 42 C.F.R. Sec. 405.724 (1988). Should the disputed amount exceed $1000, the HHA may seek judicial review of the final decision in federal district court. 42 C.F.R. Sec. 405.730 (1988). Congress, as noted by Judge Moran, "intended the remedies provided by these review procedures to be exclusive." 706 F.Supp. at 621; see S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1995.
 
 
 9
 The exclusive nature of these remedies is reflected in the statutory structure of the Medicare Act: after exhausting the provisions outlined in the regulations promulgated under 42 U.S.C. section 1395ff, many claimants, under the Medicare statutes, simply do not have recourse to the federal courts:
 
 
 10
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 11
 42 U.S.C. Sec. 405(h) (1982). Put simply, "42 U.S.C. section 405(h) (as applied to Medicare by 42 U.S.C.A. section 1395ii) provides that any 'claim arising under' the Medicare program must be brought exclusively under section 405(g)," Wilkins v. Sullivan, 889 F.2d 135, 138 (7th Cir.1989); individuals generally cannot otherwise obtain judicial review of certain actions that "arise under" this subchapter of the Medicare Act. Whether Bodimetric's state law charges (which we are asked to consider pursuant to our diversity jurisdiction) "arise under" the Medicare Act is one of the principal questions presented by this case.
 
 
 12
 B. Does Bodimetric's Claim "Arise Under" the Medicare Act?
 
 
 13
 At the outset, we observe that the Supreme Court has instructed us to read the term "arising under" broadly. See Attorney Registration & Disciplinary Comm'n v. Schweiker, 715 F.2d 282, 287 (7th Cir.1983) ("[W]e cannot disregard the Supreme Court's admonition to read section 205(h) as written--that is, broadly."). The Court considered the scope of this section in Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), and concluded that claims arising under other statutes may be barred by section 405(h) if they are also "inextricably intertwined" with benefits determinations under the Medicare Act. Id. at 622-24, 104 S.Ct. at 2025-26; see Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975) (presenting "standing and substantive basis" test). In Ringer, Medicare claimants mounted a statutory and constitutional challenge to the Secretary of Health and Human Services's final decision prohibiting reimbursement for bilateral carotid body resection ("BCBR") claims. Although the claimants styled their challenge as a claim based upon the Medicare Act, the Administrative Procedure Act and the Due Process Clause, the Court noted that the plaintiffs' complaint was, "at bottom, a claim that they should be paid for their BCBR surgery." 466 U.S. at 614, 104 S.Ct. at 204. As such, the Court concluded that the claim was inextricably intertwined with the claim for benefits and was therefore barred by section 405(h).
 
 
 14
 Nonetheless, the Supreme Court has recognized that a party does not necessarily assert a claim under the Medicare Act merely by including the word "Medicare" in his challenge. Indeed, the Court suggested in Ringer that certain Medicare-related claims may be "wholly collateral" to claims for benefits and therefore would not be barred from federal courts pursuant to section 405(h). 466 U.S. at 617-18, 104 S.Ct. at 2022-23. For example, Judge Bua concluded in Beckless v. Heckler, 622 F.Supp. 715 (N.D.Ill.1985), that a class-action challenge to HHS regulations was not "inextricably intertwined" with a claim for benefits. Id. at 718.
 
 
 15
 In the case before us, Bodimetric declares that its state law claims against Aetna are not inextricably intertwined with a challenge under the Medicare Act to Aetna's denials of individual claims. Essentially, Bodimetric argues that it seeks damages from Aetna's own pocket, not from the Medicare Trust Fund. Moreover, Bodimetric maintains that it cannot raise its challenges to Aetna's unlawful behavior in the administrative hearings provided by the Medicare regulations, and that it does not have other regulatory avenues of relief in which it may pursue its claim. In the end, as we shall see, whether Bodimetric's claim for damages is inextricably intertwined with a claim for Medicare benefits or wholly collateral to such a claim (or somewhere in between) depends largely upon whether this appeal more closely resembles United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), or Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).
 
 
 16
 C. Reconciling Erika and Michigan Academy: Judicial Review and the Supreme Court's Construction of Section 1395ff
 
 
 17
 Within the last decade, the Supreme Court has decided two cases, both by unanimous opinion,[4] that define the contours of judicial review under section 1395ff. In the first case, United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Court held that section 1395ff barred judicial review of a hearing officer's "amount of benefits" determination under Part B of the Medicare Act. The Court based its holding on Congress's calculated refusal to provide for judicial review of Part B awards in the face of an otherwise comprehensive statute:
 
 
 18
 Section 1395ff thus distinguishes between two types of administrative decisions: eligibility determinations (that decide whether an individual is 65 or over or "disabled" within the meaning of the Medicare program) and amount determinations (that decide the amount of the Medicare payment to be made on a particular claim). Conspicuously, the statute fails to authorize further review for determinations of the amount of Part B awards. In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims.
 
 
 19
 456 U.S. at 208, 102 S.Ct. at 1654.
 
 
 20
 The Court narrowed its Erika holding in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). There, the Court concluded that section 1395ff does not bar judicial review of claimant challenges to the validity of administrative regulations promulgated under the Medicare Act. The Court in Michigan Academy upheld Erika, but carefully limited its preclusion of judicial review to Part B amount determinations. The comprehensive Medicare statutory scheme, the Court observed,
 
 
 21
 simply does not speak to challenges mounted against the method by which such amounts are to be determined rather than the determinations themselves. As the Secretary has made clear, "the legality, constitutional or otherwise, of any provision of the Act or regulations relevant to the Medicare Program" is not considered in a "fair hearing" held by a carrier to resolve a grievance related to a determination of the amount of a Part B award. As a result, an attack on the validity of a regulation is not the kind of administrative action that we described in Erika as an "amount determination" which decides "the amount of the Medicare payment to be made on a particular claim" and with respect to which the Act impliedly denies judicial review.
 
 
 22
 476 U.S. at 675-76, 106 S.Ct. at 2138 (emphasis in original) (footnote omitted). Thus, the Court in Erika and Michigan Academy recognized the differences between two types of Medicare claims: challenges to the amount of benefits to be paid are not reviewable, while challenges to the regulatory scheme under which the amount of benefits is calculated are reviewable. Id. at 675-78, 106 S.Ct. at 2138-39. See, e.g., Texas Medical Ass'n v. Sullivan, 875 F.2d 1160, 1164-66 (5th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989); Association of Seat Lift Mfrs. v. Bowen, 858 F.2d 308, 316 (6th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); Medical Fund-Philadelphia Geriatric Center v. Heckler, 804 F.2d 33, 38-39 (3d Cir.1986); American Ambulance Serv. v. Sullivan, 716 F.Supp. 861, 867-69 (E.D.Pa.1989); United States v. Ruegsegger, 702 F.Supp. 438, 446-47 (S.D.N.Y.1988) (all discussing relationship between Erika and Michigan Academy ).
 
 
 23
 Other courts to have considered similar challenges have reached the same conclusion. In Kuritzky v. Blue Shield, 850 F.2d 126 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989), the Second Circuit considered an appeal from a carrier's denial of physicians' reimbursement claims. Like Bodimetric, the Kuritzky physicians "complained ... about the way in which their benefits were computed." Id. at 127. The court there held that the physicians' challenge was barred by the Medicare Act; it explained: "The distinction that emerges from Erika and Michigan Academy is that federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations." Kuritzky, 850 F.2d at 128 (citations omitted). Since the physicians charged, at bottom, that the carrier had misapplied the regulations, the court concluded that Erika--and its jurisdictional bar--controlled. Similarly, in Association of Seat Lift Manufacturers v. Bowen, 858 F.2d 308 (6th Cir.1988), the Sixth Circuit refused to consider the reasonableness of a carrier's determination of the allowable charge for a seat lift chair; like the Second Circuit in Kuritzky, the court held that Michigan Academy does not authorize judicial review of a carrier's application of administrative regulations. Id. at 316. And in Neiman v. Secretary of the Department of HHS, 722 F.Supp. 950 (E.D.N.Y.1988), a district court reasoned that Erika precluded federal review of Travelers Insurance Company's alleged failure to process a nursing home operator's Medicare applications as required by law.
 
 
 24
 The Second Circuit aptly summarized the distinction between Michigan Academy and Erika discussed in these recent cases:
 
 
 25
 [T]he statement in Michigan Academy that challenges to the "method" of calculating benefits are reviewable as opposed to challenges to the "determinations themselves," which are not, clearly refers to the distinction between the rules, regulations, and statutes setting forth the proper computation method and the carrier's application of those provisions in determining the benefits owed. "Method" does not mean the carrier's method of applying the regulations, which Erika held was unreviewable; rather, it means the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits. Michigan Academy held that a challenge to this prescribed method was reviewable. Plaintiffs' claims allege only misapplication of valid regulations and are therefore unreviewable under Erika.
 
 
 26
 Kuritzky, 850 F.2d at 128 (citations omitted). Whether its complaint is with Aetna's rejection of one claim or a thousand claims, Bodimetric's grievance is, at bottom, a challenge to Aetna's approach to processing claims. Judicial review of such a challenge seems to be foreclosed by Erika.
 
 
 27
 Nonetheless, Bodimetric argues that the Court's holding in Michigan Academy should not be construed to permit judicial review of challenges to rules or regulations only; rather, Bodimetric asserts Michigan Academy's touchstone for judicial review is whether the challenge can be considered in an administrative hearing process. Dicta in Michigan Academy provides some support for this position: "We conclude ... that those matters which Congress did not leave to be determined in a 'fair hearing' conducted by the carrier--including challenges to the validity of the Secretary's instructions and regulations--are not impliedly insulated from judicial review by 42 U.S.C. Sec. 1395ff (1982 ed. and Supp. II)." 476 U.S. at 678, 106 S.Ct. at 2140 (emphasis in original). Bodimetric would have us believe that since it cannot challenge Aetna's benefits determinations in the administrative proceedings, the subject of these determinations should be judicially reviewable under the terms of Michigan Academy.
 
 
 28
 However, unlike the claimants in Michigan Academy, Bodimetric can challenge Aetna's benefits determinations (albeit on an individual basis) in the administrative proceedings. Indeed, Bodimetric acknowledges in its reply brief that it knows of no provision in the regulations prohibiting it from introducing the facts underlying its claims during the administrative hearings. Appellants' Reply Brief at 14. As Judge Moran remarked,
 
 
 29
 the underlying allegations concerning Aetna's actions provide a basis for plaintiffs' administrative challenges under Sec. 1395ff. True, the Secretary cannot adjudicate plaintiffs' claims under RICO and the common law; yet RICO and the common law would simply provide plaintiffs with theories to recover the value of lost benefits and consequential damages in a case where the underlying facts could be raised in the administrative process.
 
 
 30
 706 F.Supp. at 626. The ALJ's ability to consider the claims at issue here (and Bodimetric's right to advance them) lies in stark contrast to the Hearing Officer's express prohibition in Michigan Academy from reviewing legal challenges to the regulations promulgated under the strictures of the Medicare Act. 476 U.S. at 676 n. 6, 106 S.Ct. at 2138 n. 6.
 
 
 31
 Drawing from Michigan Academy, Bodimetric complains that its right to introduce its claims of Aetna's unlawful conduct in the administrative hearing process is rendered meaningless by the ALJ's inability to award money damages directly to Bodimetric based upon its state law tort and contract claims. While this complaint is not entirely groundless, it is somewhat misleading. Bodimetric can seek review of Aetna's denials through Medicare's administrative process; to be sure, the ALJ reviewing a denied claim may consider substantively different issues than might a state or federal judge reviewing a tort or contract claim, but the ALJ can provide relief to Bodimetric through the reversal of denied claims.[5] On the other hand, the claimants in Michigan Academy could not have sought review of the regulatory structure of the Medicare Act; even if the claimants had presented their arguments, Medicare's Hearing Officers still would have been completely powerless to make any changes in the existing regulations.
 
 
 32
 Thus, Bodimetric's reading of Michigan Academy is too broad. A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined. See Michigan Academy, 476 U.S. at 680 n. 11, 106 S.Ct. at 2141 n. 11; Erika, 456 U.S. at 208-09, 210 n. 13, 102 S.Ct. at 1654-55, 1655 n. 13; Ringer, 466 U.S. at 621-22, 627 & n. 14, 104 S.Ct. at 2025, 2028 & n. 14.[6] As a result, Bodimetric's claim is not governed by Michigan Academy; instead, it is governed by the terms of Erika. It therefore is subject to the exclusive review provisions of section 1395ff.
 
 III.
 
 33
 That Bodimetric's claim is governed by these exhaustive review provisions of the Medicare Act does not end our inquiry, however. Section 405(h) does not facially bar judicial review of every potential action: it precludes only those actions brought "against the United States, the Secretary, or any officer or employee thereof." 42 U.S.C. Sec. 405(h) (1982). Bodimetric argues that Aetna, in its role as fiscal intermediary, does not serve as an "officer or employee" of the United States and is therefore not immune from suit under the Medicare Act.
 
 
 34
 In addressing this issue, we do not write on a clean slate. In Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660 (7th Cir.1977), we found that the Medicare Act precluded judicial review of Trinity Memorial's claim arising from a cost reimbursement dispute. We therefore reversed the judgment of the district court (which had found jurisdiction) and dismissed Trinity Memorial's claim with respect to all the defendants, including Associated Hospital Service, Inc., the fiscal intermediary administering the Medicare Program. Id. at 667-68; see Marin v. HEW, Health Care Financing Agency, 769 F.2d 590 (9th Cir.1985) (affirming dismissal of claim against fiscal intermediary), cert. denied, 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986). And in Homewood Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242 (7th Cir.1985), we hinted that certain "unknown federal officials and agents acting in their individual capacities," who were deemed to be covered by section 405(h) when the case was dismissed, included the fiscal intermediary processing Homewood's claims.
 
 
 35
 We decline to take a different stance here. Congress intended for private organizations (and specifically fiscal intermediaries) to play a "considerable role" in the Medicare reimbursement program. S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1992-95. Indeed,
 
 
 36
 [i]n the performance of their contractual undertakings, the carriers and fiscal intermediaries ... act on behalf of the Secretary, carrying on for him the governmental administrative responsibilities imposed by the bill. The Secretary, however, would be the real party in interest in the administration of the program, and the Government would be expected to safeguard the interests of his contractual representatives with respect to their actions in the fulfillment of commitments under the contracts and agreements entered into by them with the Secretary.
 
 
 37
 Id. at 1995. If dissatisfied claimants could avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary, the Medicare Act's goals of efficiency and finality would be substantially undermined. Moreover, since Congress apparently did not differentiate between the respective abilities of public and private agencies to serve as fiscal intermediaries, 42 U.S.C. Sec. 1395h(a), we see no reason to allow claimants to proceed against private agencies when they clearly cannot proceed against federal agencies.
 
 
 38
 In a more general context, such a holding would run contrary to Congress's intent to limit judicial review of Medicare claims in order to relieve the burden on the federal judiciary. In Erika, the Supreme Court credited Senator Bennett's remarks in this regard: " 'If judicial review is made available where any claim is denied, as some court decisions have held, the resources of the Federal court system would be unduly taxed and little real value would be derived by the enrollees.' " Erika, 456 U.S. at 210 n. 13, 102 S.Ct. at 1655 n. 13. We therefore conclude that suits against fiscal intermediaries are governed by the terms of section 405(h).
 
 IV.
 
 39
 We have determined that Bodimetric's claims against Aetna arise under the Medicare Act and that Bodimetric may not circumvent the terms of section 405(h) simply because a private entity (Aetna) serves a public function. We now must consider whether section 405(h) precludes review of a claim that is brought pursuant to our diversity jurisdiction, 28 U.S.C. section 1332.
 
 
 40
 Section 405(h) states that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. Sec. 405(h) (1982) (emphasis supplied). Curiously, this section, on its face, appears to bar actions brought pursuant to federal question jurisdiction and actions brought against the United States but appears to permit actions brought pursuant to diversity jurisdiction.
 
 
 41
 Bodimetric's argument here is straightforward: since section 405(h) does not expressly preclude actions brought pursuant to diversity jurisdiction, such actions may be brought against fiscal intermediaries.[7] Unfortunately for Bodimetric, however, a close reading of the statute (and its legislative history) does not support such a straightforward result.
 
 
 42
 Upon its original enactment, section 405(h) barred all actions brought pursuant to 28 U.S.C. section 41, which, in turn, "contained [virtually] all of the grants of jurisdiction to the United States district courts under Title 28," including the predecessor to the current diversity grant, 28 U.S.C. section 1332. Northlake Community Hosp. v. United States, 654 F.2d 1234, 1239 n. 5 (7th Cir.1981); see Social Security Act Amendments of 1939, Pub.L. No. 379, Sec. 205(h), 53 Stat. 1360, 1371 (1939); Salfi, 422 U.S. at 756 n. 3, 95 S.Ct. at 2462 n. 3. At that time, therefore, there was little question that section 405(h) barred claims based upon diversity jurisdiction.
 
 
 43
 In 1976, however, the Office of Law Revision Counsel "revised" section 405(h) from its general bar of jurisdiction to its present form, which seems to preclude only those actions "brought under section 1331 or 1346 of Title 28," and not those actions brought under the other jurisdictional sections, including 28 U.S.C. section 1332:
 
 
 44
 In subsec. (h), "section 1331 or 1346 of Title 28" was substituted for "section 24 of the Judicial Code of the United States" on authority of Act June 25, 1948, c. 646, 62 Stat. 869, section 1 of which enacted Title 28, Judiciary and Judicial Procedure. Prior to the enactment of Title 28, section 24 of the Judicial Code was classified to section 41 of Title 28. Jurisdictional provisions previously covered by section 41 of Title 28 are covered by sections 1331 to 1348, 1350 to 1357, 1359, 1397, 1399, 2361, 2401, and 2402 of Title 28.
 
 
 45
 42 U.S.C.A. Sec. 405 (West 1982) (codification note). Since Congress had not yet approved this apparent revision, original section 405(h)--with its bar on claims brought pursuant to federal courts' diversity jurisdiction--still controlled to the extent that original section 405(h) conflicted with the newly codified version.[8] See Act of June 30, 1926, Pub.L. No. 440, Ch. 712, codified at 1 U.S.C. p. LXXXV (1988) ("In case of any inconsistency arising through omission or otherwise between the provisions of any section of the Code and its corresponding portion of legislation heretofore enacted effect shall be given for all purposes whatsoever to such enactments."); Stephan v. United States, 319 U.S. 423, 426, 63 S.Ct. 1135, 1136, 87 L.Ed. 1490 (1943) ("[T]he Code cannot prevail over the Statutes at Large when the two are inconsistent.").
 
 
 46
 But Congress eventually did act upon this revision. In enacting the Deficit Reduction Act of 1984 ("DEFRA"), Congress adopted the codifier's revised language by placing in Subtitle D (labelled "Technical Corrections" and containing numerous such changes) the following language: "Section 205(h) of such Act is amended by striking out 'section 24 of the Judicial Code of the United States' and inserting in lieu thereof 'section 1331 or 1346 of title 28, United States Code,'." Pub.L. No. 98-369, 98 Stat. 1162, Sec. 2663(a)(4)(D). At the same time, Congress cautioned the courts not to interpret DEFRA's "Technical Corrections" as substantive changes:
 
 
 47
 [T]he amendments made by section 2663 shall be effective on the date of the enactment of this Act; but none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date.
 
 
 48
 Id., Sec. 2664(b) (emphasis supplied). In this section, Congress clearly expressed its intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions. Any other interpretation of this section would contravene section 2664(b) by "changing or affecting [a] right, liability, status, or interpretation" of section 405(h) that existed before the Technical Corrections were enacted.[9] See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (when "in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... those intentions must be controlling."); Muniz v. Hoffman, 422 U.S. 454, 470, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975) ("It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such an intention be clearly expressed.") (quoting United States v. Ryder, 110 U.S. 729, 740, 4 S.Ct. 196, 201, 28 L.Ed. 308 (1884)); cf. United States v. Thompson, 319 F.2d 665, 669-70 (2d Cir.1963); Prudencio v. Hanselmann, 178 F.Supp. 887, 888-89 (D.Minn.1959). Bodimetric's challenge to Aetna's method of processing its claims, therefore, is directly controlled by the provisions of section 405(h). The district court thus properly found that it lacked subject matter jurisdiction to consider Bodimetric's claims.[10]
 
 V.
 
 49
 By enacting the exclusive review provisions of the Medicare Act, Congress expressly limited the remedies that can be sought by dissatisfied claimants from fiscal intermediaries. While this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement. Any decision to modify this aspect of the system must be made by Congress, not by the courts.
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 Unless otherwise indicated, we will refer to the appellants collectively as "Bodimetric."
 
 
 [2]
 Part A of the Medicare Act provides insurance for hospitalization and post-hospitalization costs. Part B provides supplemental insurance that covers other medical and health services. See New York State Dept. of Social Servs. v. Bowen, 661 F.Supp. 1537, 1539 (S.D.N.Y.1987), rev'd on other grounds, 846 F.2d 129 (2d Cir.1988)
 
 
 [3]
 "A fiscal intermediary is an entity that has contracted with the Secretary to determine for the Secretary whether services provided ... are covered under the Medicare Act and the amount due the provider of services." Homewood Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242, 1244 n. 2 (7th Cir.1985). The fiscal intermediary must determine whether HHA-submitted expenses are reasonable and necessary: in particular, it must
 review claims for compliance with coverage requirements, determine the reasonable cost of services, make payments directly to health care providers, provide consultative services, communicate to providers any information or instruction from HCFA [Health Care Financing Administration], audit provider records and assist with utilization review activities.
 Bodimetric, 706 F.Supp. at 621; see 42 U.S.C.A. Sec. 1395h (West Supp.1990); 42 C.F.R. Sec. 421.100 (1988).
 
 
 [4]
 Chief Justice Rehnquist did not participate in Michigan Academy
 
 
 [5]
 Of course, we recognize that the administrative process outlined by section 1395ff may not afford Bodimetric all the relief it seeks pursuant to its state law claims. But Congress, through its establishment of a limited review process, has provided the remedies it deems necessary to effectuate the Medicare claims process. Neiman, 722 F.Supp. at 953; see Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 2468, 2470-71, 101 L.Ed.2d 370 (1988)
 
 
 [6]
 In this light, we reject Bodimetric's assertion that "[t]he clearest evidence that [Bodimetric's] claims are not 'inextricably intertwined' is that [Bodimetric] is challenging Aetna's actions as being outside the scope of its contract to function as an intermediary." Appellants' Reply Brief at 11. We agree with the Neiman district court that "plaintiff cannot escape the reach of Erika by characterizing the action against [Aetna] as an 'ultra vires' claim." 722 F.Supp. at 952
 
 
 [7]
 Although Bodimetric's complaint included a civil RICO count, it has withdrawn this count on appeal for purposes of federal jurisdiction. Appellants' Brief at 46 n. 18. We therefore concentrate solely on Bodimetric's state law claims brought pursuant to diversity jurisdiction
 
 
 [8]
 We therefore must disagree with the apparent conclusion reached implicitly (before Congress enacted revised section 405(h)) by the Eighth Circuit in Rochester Methodist Hospital v. Travelers Insurance Co., 728 F.2d 1006 (8th Cir.1984), and by the District of Puerto Rico in Hospital San Jorge, Inc. v. Blue Cross Association, 1977 (Transf. Binder) Medicare & Medicaid Guide (CCH) p 28,306 (D.P.R.1976), that seems to permit claimants to maintain actions against fiscal intermediaries based upon diversity jurisdiction. Neither court, however, squarely addressed the revision of section 405(h) or the legislative history accompanying it
 
 
 [9]
 Neither party has explained why Congress enacted revised section 405(h), nor has our independent review of the legislative history shed any light on the inquiry. Indeed, Bodimetric has not explained why Congress would want to preclude judicial review of federal question claims but permit judicial review of state law claims under diversity jurisdiction. In any event, given the clear cautionary language of DEFRA section 2664(b), we find that Congress, in enacting revised section 405(h), did not intend to treat diversity claims differently than federal question claims. Both are subject to the limited review provisions of section 405(h)
 
 
 [10]
 Since we have concluded that the district court did not have subject matter jurisdiction to entertain Bodimetric's claims, we need not address Aetna's defense of official immunity, nor do we have occasion to consider the government's motion to intervene