**LIFECARE HOSPITALS, INC.**

v.

**OCHSNER HEALTH PLAN, INC.**

**No. CIV. A. 00–1320.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

March 21, 2001.

James R. Madison, Wiener, Weiss & Madison, Shreveport, LA, for plaintiff.

Mr. Michael W. Hill, Taggart, Morton, Ogden, Staub, Rougelot, Brocato & O'Brien, New Orleans, for defendant.

### *MEMORANDUM RULING*

STAGG, District Judge.

### *I. INTRODUCTION*

This is an action by Lifecare Hospitals ("Lifecare") to collect $210,362.00 from Ochsner Health Plan, Inc. ("OHP") for hospital services rendered to three (3) pa-

tients enrolled in OHP's "Total Health 65 Medicare + Choice" plan, late charges, legal interest, and costs. Lifecare owns and operates a long-term acute care facility in Shreveport, Louisiana which provides acute care and rehabilitative services to its patients, most of whom are seriously ill when admitted. OHP is a health maintenance organization headquartered in Metairie, Louisiana, which serves as a fiscal intermediary under the Medicare Act, administering funds under the authority of the Secretary of the Department of Health and Human Services through its "Total Heath 65 Medicare + Choice" plan (hereinafter, "plan").

On May 5, 1999, Anthony Sanangelo was admitted to Lifecare where he remained hospitalized until February 16, 2000—a period of two hundred eighty-seven (287) days. During that time, Mr. Sanangelo was enrolled as a member of OHP's plan. Although a substantial portion of Lifecare's claims for services rendered to Mr. Sanangelo were paid, Lifecare has not received payment for $185,000 worth of services. On June 11, 1999, Murphy Williams was admitted to Lifecare where he remained hospitalized until June 25, 1999—a period of fourteen (14) days. During that time, Mr. Williams was enrolled as a member of OHP's plan. The total amount of Lifecare's claim for services rendered to Mr. Williams was $11,200, none of which has been paid. On September 29, 1999, Milton Smith was admitted to Lifecare where he remained hospitalized until October 17, 1999—a period of eighteen (18) days. During that time, Mr. Smith was enrolled as a member of OHP's plan. The total amount of Lifecare's claim for services rendered to Mr. Smith was $14,400, none of which has been paid.

On April 27, 2000, Lifecare filed suit against OHP in the First Judicial District Court of Caddo Parish to recover the amounts owed for hospital services rendered to the plan enrollees, late charges, legal interest, and costs. On June 2, 2000, OHP removed the case to the Western District of Louisiana pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441, 28 U.S.C. § 1442(a)(1), and 42 U.S.C. § 405(h). *See* Record Document 3. In its notice of removal, OHP expressly reserved the right to seek dismissal of the action based on Lifecare's failure to exhaust administrative remedies pursuant to section 405(g) of the Medicare Act. *See* 42 U.S.C. § 405(g). On November 24, 2000, OHP filed the instant motion for summary judgment, seeking, *inter alia,* dismissal of Lifecare's case for lack of subject matter jurisdiction. *See* Record Document 14. In light of the arguments made therein, and the court's review of the relevant statutory and jurisprudential authority, OHP's motion for summary judgment is **DENIED AS MOOT** and this action is **DISMISSED** for lack of subject matter jurisdiction.

## II. DISCUSSION

A. Subject Matter Jurisdiction.

Federal Rule of Civil Procedure 12(h)(3) dictates that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." OHP has suggested that this court lacks subject matter jurisdiction, arguing that Lifecare's claims, though styled as purely contractual, "arise under" the Medicare Act and are subject to the mandatory exhaustion requirements of 42 U.S.C. § 405(g).[1] Specifically, OHP contends that

---

**1.** Incorporating Section 405(g) of Title 42, the Medicare Act provides that judicial review of a claim may only occur after a "final decision" has been rendered on such claims. A

final decision is rendered on a Medicare claim only after all the levels of administrative review have been exhausted. 42 U.S.C. § 405(h), made applicable to the Medicare

because Lifecare seeks payment for services provided to enrollees in OHP's Medicare plan, its claims are "inextricably intertwined" with claims for medical benefits under the Medicare Act. Accordingly, argues OHP, Lifecare must exhaust the administrative remedies provided for under the Medicare Act and the Code of Federal Regulations before seeking judicial review of its claims. Until all the levels of administrative review have been exhausted, asserts OHP, this court lacks subject matter jurisdiction over Lifecare's claims. The court agrees.

### B. Claims "Arising Under" the Medicare Act.

■ Whether a claim "arises under" the Medicare Act is determined by either one of two tests articulated by the Supreme Court. First, a claim arises under the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim are the Medicare Act. *See Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). Second, a claim arises under the Medicare Act if it is "inextricably intertwined" with a claim for medical benefits. *See Ringer,* 466 U.S. at 623, 104 S.Ct. at 2026. Pursuing a claim through administrative channels is not necessary when a claim is "wholly collateral" to a claim for benefits, and a colorable showing has been made that the claimant's injury cannot be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies. *See Ringer,* 466 U.S. at 617, 104 S.Ct. at 2023. A court should construe the "arising under" standard broadly. *See Ardary v. Aetna Health Plans of California,* 98 F.3d 496, 500 (9th Cir.1996); *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480, 483 (7th Cir.1990) (observing that the

Supreme Court instructed the lower courts to read the term "arising under" broadly in *Ringer* ).

■ Lifecare's complaint does not state the legal grounds upon which it seeks relief, but in its opposition to OHP's motion for summary judgment, Lifecare contends that it is seeking recovery of the amounts OHP agreed to pay to Lifecare under contract. The court agrees that the most accurate characterization of Lifecare's claims is that they are contractual in nature. Under this reading of the complaint, Lifecare's claims do not satisfy the first *Ringer* "arising under" test, as both the standing and the substantive basis for the presentation of Lifecare's claims are not the Medicare Act, but the Louisiana law of contracts. However, Lifecare's claims do satisfy the second *Ringer* test.

■ In *Ringer,* the plaintiffs sought a declaration that the Secretary's refusal to cover a particular procedure under Medicare was unlawful, an injunction requiring the Secretary to pay claims for the procedure, and an injunction eliminating the need for each plaintiff to pursue an administrative appeal. *See Ringer,* 466 U.S. at 611, 104 S.Ct. at 2019. The Supreme Court held that the plaintiffs' claims were inextricably intertwined with claims for benefits because the plaintiffs' asserted claims were, "at bottom," claims for reimbursement for a medical procedure. *See Ringer,* 466 U.S. at 614, 104 S.Ct. at 2021. In this case, Lifecare alleges that it provided medical services to three enrollees in OHP's Medicare plan, and that, under its contract with the Northern Louisiana Physician Hospital Organization ("NLPHO"), OHP's agent, it is entitled to payment from OHP for the cost of those treatments. Thus, there is no doubt that Lifecare's

Act by 42 U.S.C. § 1395ii, requires that judicial review of claims arising under the Medi-

care Act exactly follow the procedure described in section 405(g).

claims are, at bottom, claims for reimbursement for benefits provided to enrollees in OHP's plan. Moreover, Lifecare's claims cannot be defined as "wholly collateral" to a claim for benefits because Lifecare's injury can be remedied by the retroactive payment of benefits after exhaustion of its administrative remedies.[2] Because Lifecare's claims are inextricably intertwined with claims for benefits, the court holds that they arise under the Medicare Act. *See Ringer,* 466 U.S. at 614, 104 S.Ct. at 2021; *Jamaica Hospital Nursing Home v. Oxford Health Plans,* 2000 WL 1404930 (S.D.N.Y.) (holding that nursing home's claims for reimbursement of benefits provided to Medicare recipient enrolled in private insurance plan arose under Medicare Act, even though claims were interpreted as contractual); *Redmond v. Secure Horizons, Pacificare, Inc.,* 60 Cal.App.4th 96, 101–02, 70 Cal.Rptr.2d 174 (1997) (finding that claims for denied and delayed reimbursement arose under Medicare Act even though they were presented as contract claims). Because Lifecare's claims arise under the Medicare Act, Lifecare must exhaust the mandatory administrative remedies prescribed by the Act before seeking judicial review of its claims.

## C. Exhaustion of Administrative Remedies.

The administrative remedy procedure for a Medicare participant enrolled in a "Medicare + Choice" plan, such as the OHP plan, is delineated at 42 C.F.R. § 422.560 *et seq.* Under section 422.562(b)(2), enrollees in Medicare + Choice ("M + C") plans have the right to a timely "organization determination" by their M + C organization, and if they are dissatisfied with that determination, they may seek, in order, the following

remedies: (1) a reconsideration of the determination by the Medicare + Choice organization; (2) a hearing before an Administrative Law Judge if they are dissatisfied with the reconsidered determination by the organization; (3) a request for review by the Departmental Appeals Board of the ALJ hearing decision, if they are dissatisfied with that decision; and finally (4) judicial review of the ALJ's decision if the Board denies the party's request for review, or judicial review of the Board's decision if it is the final decision of the Health Care Financing Administration and the amount in controversy exceeds $1,000. *See* 42 C.F.R. § 422.560 *et seq.*

■ Lifecare argues that it is not required to exhaust the administrative remedies detailed above because it received an informal advisory letter from a "Medicare Managed Care Specialist" at HCFA's Division of Beneficiaries, Health Plans and Providers, Region VI, in Dallas, Texas, stating that the dispute in this case involved no "organization determination" by OHP "because the basis for OHP's refusal to pay is that it has already paid for the services [rendered by Lifecare]." The court is not persuaded by Lifecare's argument. 42 C.F.R. § 422.566(b) provides that "[a]n organization determination is any determination made by an M + C organization [*viz.* OHP] with respect to any of the following: ... (3) *The M + C organization's refusal* to provide or *pay for services, in whole or in part,* including the type or level of services, that the enrollee believes should be furnished or arranged for by the M + C organization." *See id.* (emphasis added). OHP made an organization determination as defined by section 422.566(b) when it refused to pay,

---

**2.** The court also notes in passing that "[a] party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits." *Bodimetric Health Services, Inc.,* 903 F.2d at 487.

in part, for services rendered by Lifecare to Mr. Sanangelo, and when it refused to pay, in whole, for services rendered by Lifecare to Mr. Williams and Mr. Smith.

Regardless of what the Medicare Managed Care Specialist at HCFA may have been told about this case by Lifecare, OHP contends that it is not required to pay for the services rendered by Lifecare because of contractual arrangements with Lifecare and NLPHO, not because it has already paid for the services. Indeed, OHP has not paid for *any* services rendered by Lifecare to Mr. Williams or Mr. Smith, and allegedly still owes Lifecare $185,000 for services rendered to Mr. Sanangelo. Thus, the court finds HCFA's advisory letter to Lifecare to be unpersuasive.

Finally, Lifecare argues that it should not be required to pursue the administrative remedies dictated by the Medicare Act because it would be futile to do so. The administrative exhaustion requirement may be waived if it would be futile, i.e., if "there is no reasonable prospect that the applicant could obtain any relief by pursuing" such administrative remedies. *See Manakee Prof'l Med. Transfer Service, Inc. v. Shalala,* 71 F.3d 574, 581 (6th Cir.1995) (quoting *Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963, 965 (7th Cir.1991)). While it is clear that Lifecare would prefer an immediate appeal to the district court rather than the often lengthy administrative review process, in light of the fact that Lifecare may, in fact, seek judicial review after pursuing its administrative remedies, the court holds that it would not be an exercise in futility for Lifecare to comply with the Medicare Act's exhaustion requirements.

### III.  CONCLUSION

For the reasons set forth above, this action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). The defendant's motion for summary judgment is **DENIED AS MOOT.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.