**ALLSTAR CARE INCORPORATED,**
a Florida Corporation, Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, CORPORATION, d/b/a Palmetto Government Benefits Administrators, Defendant.**

No. 99–3507–CIV.

United States District Court,
S.D. Florida.

Jan. 30, 2002.

John Bradley Agnetti, Hoffman Larin & Agnetti, North Miami, FL, for Plaintiff.

Magda Lovinsky, J. Kirk Ogrosky, United States Attorney's Office, Miami, FL, for Defendant.

## ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Motion to Dismiss Second Amended Complaint (D.E.28), filed July 21, 2000, by Defendant Blue Cross and Blue Shield of South Carolina, Corporation, d/b/a Palmetto Government Benefit Administrators ("Palmetto"). On August 10, 2000, Plaintiff Allstar Care Inc. filed a Response to the Motion. (D.E.29.) On August 14, 2001, Defendant filed a Reply in support of its Motion. (D.E.30.)

## I. Factual and Procedural Background

Plaintiff Allstar, a listed Medicare provider located in Miami–Dade County, Florida, is suing Defendant Palmetto, a private South Carolina-based insurance company, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant is a "fiscal intermediary" which reimburses Medical providers, such as Allstar, for services rendered to Medicare beneficiaries. Like other fiscal intermediaries, Defendant contracts with the Secretary of Health and Human Services ("HHS") to administer major medical claims under the Medicare program and acts as a financial conduit for the Medicare Trust Fund, handling billing procedures and the payment of funds to providers on behalf of the Secretary of HHS.

In carrying out its payment responsibilities, intermediaries are required to ascertain the "reasonable costs" of providers' services to Medicare beneficiaries based upon a "cost report" generated by the provider at the close of its fiscal year. Upon receipt of the cost report, the intermediary is required under 42 C.F.R. § 405.1803 to examine the report and perform any necessary audits. The intermediary also contracts with HHS to identify cases of suspected fraud and abuse and refer these to the office of the Inspector General of HHS for consideration of criminal, monetary or administrative actions. Providers may appeal an intermediary's final decision to the Provider Reimbursement Review Board ("PRRB"), which then issues a decision. 42 U.S.C. § 1395oo(a). The Secretary of HHS, acting through the Administrator of the Health Care Financing Administration, may overrule, affirm or modify the review board's decision. 42 U.S.C. § 1395oo(f)(1). At the completion of the administrative process, providers are entitled to seek review of the final agency decision in federal court. 42 U.S.C. § 1395oo(f)(1). Thus, Plaintiffs may only claim review under 42 U.S.C. § 405(g), which states that "any individual, after any final decision of the [HHS] Secretary ... may obtain review of such decision by a civil action commenced ... in the

district court of the United States." 42 U.S.C. § 405(g).

Plaintiff does not seek administrative review in this Court, but instead asserts four separate causes of action in its Second Amended Complaint pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. These are: (1) Malicious Prosecution under Florida law (Compl.¶¶ 18–66); (2) Outrageous Conduct and Gross Negligence under Florida law (Compl.¶¶ 67–93); (3) Fraud under Florida law (Compl.¶¶ 94–101); and (4) Tortious Interference with Business Relations under Florida law (Compl.¶¶ 102–107). In essence, Plaintiff asserts that Defendants used allegations of fraud and abuse to deny claims for the reimbursement of funds and thus force Plaintiff out of business. Plaintiff specifically alleges that Defendant engaged in four consecutive audits despite repeated determinations by administrative law judges that roughly ninety percent of the charges were reversed and reinstated as involving properly reimbursed claims. (Compl.¶ 16) Rather than appeal decisions rendered by the administrative process to the federal court, Plaintiff has filed the instant case.

## II. Parties' Arguments

Defendant moves to dismiss the Complaint with prejudice on the basis that the Court lacks subject matter jurisdiction to hear this case because the Medicare statute precludes diversity jurisdiction over claims arising under the Medicare Act. (Pl.'s Mot. Dismiss at 8.) Defendant contends that Plaintiff's claims "arise under" the Medicare Act because they are "inextricably intertwined" with Plaintiff's assertions that its claims for reimbursement should not have been denied. (Pl.'s Mot. Dismiss at 10.) In addition, Defendant argues that the Second Amended Complaint fails to state a claim because Plaintiff's claims have been preempted by the Medicare Act and Defendant, as a fiscal

intermediary, is entitled to official immunity barring this lawsuit. (Pl.'s Mot. Dismiss at 14.)

Plaintiff argues that Defendant's actions were "outside the scope" of the Medicare Act and, therefore, are not subject to the statute's prohibition against bringing claims arising under the Act. Plaintiff further states that Defendant is only entitled to immunity to the extent that the government is exposed to financial risk, which does not apply where recovery comes directly from a private insurance company. Similarly, Plaintiff argues that Defendant is not entitled to immunity because the actions alleged in the Complaint do not involve the Government's agreement to indemnify a fiscal intermediary and thus do not fall within the sphere of conduct covered by the Act.

## III. Standard of Review

The Eleventh Circuit has clearly established the standard of review for a motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For purposes of considering a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint and all reasonable inferences drawn therefrom. *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234 (11th Cir.1999); *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990). Moreover, the Court may only dismiss an action with prejudice where it is clear that the "plaintiff can prove no set of facts in support of the claims in the Complaint." *Canadyne–Georgia Corp. v. NationsBank, N.A. (South)*, 183 F.3d 1269, 1272 (11th Cir.1999); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## IV. Analysis

### A. Lack of Subject Matter Jurisdiction

The Second Amended Complaint asserts jurisdiction solely on the basis of diversity

of citizenship pursuant to 28 U.S.C. § 1332. Although a plaintiff may appeal decisions rendered by the administrative process to the federal court, Plaintiff explicitly asserts that: "No review is requested nor is an affirmation, modification or reversal of the Defendant's individual actions sought." (Def.'s Resp. at 2.) Instead, Plaintiff argues that its claims are directly cognizable under 28 U.S.C. § 1332 as they do not arise under the Medicare Act.

### 1. The Jurisdictional Scope of the Medicare Act

Actions arising under the Medicare Act are clearly not within the jurisdiction of the Court. According to 42 U.S.C. § 405(h), which is incorporated into the Medicare program by 42 U.S.C. § 1395ii:

> No findings of fact or decision of the [HHS Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [HHS Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

As 42 U.S.C. § 405(h) provides that "no finding of fact or decision of the Secretary shall be reviewed" except as provided within the statute, a claim may not be reviewed outside of the statutory scheme provided in the Act. As such, the act prevents review of the HHS Secretary's decisions in federal court except pursuant to 42 U.S.C. § 405(g).

The language of § 405(h) explicitly removes the possibility of reviewing Medicare claims on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Although, apparently, the Eleventh Circuit has not directly ruled on the issue of a suit brought under diversity jurisdiction, the two federal circuit courts to have ad-

dressed the issue have concluded that § 405(h) precludes review under diversity jurisdiction to the same extent that federal question jurisdiction is precluded. *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480, 489 (7th Cir. 1990); *Midland Psychiatric Associates, Inc. v. United States,* 145 F.3d 1000, 1003–04 (8th Cir.1998).

■ These courts have held that the omission of 28 U.S.C. § 1331 was essentially an oversight in the revision of § 405. As originally enacted, § 405 prevented all actions brought under 28 U.S.C. § 41, which included essentially all grants of jurisdiction under Title 28 to United States district courts, including the existing grant of diversity jurisdiction. *Weinberger v. Salfi,* 422 U.S. 749, 756 n. 3, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In 1976 the codifiers of the United States Code revised the language of § 405(h) to refer to "sections 1331 or 1346 of title 28" instead of section 24 of the Judicial Code to reflect the 1948 revision of Title 28. (See 42 U.S.C. § 405 note, at 518 (1976)). This revision was ultimately enacted by Congress in Section 2663(a)(4)(D) of the 1984 Deficit Reduction Act (PubL. No. 98–369, 98 Stat. 1162, § 2663(a)(4)(D)). In the language of its enactment, however, Congress warned the courts not to interpret these "Technical Corrections" in the Deficit Reduction Act as substantive changes.

> [T]he amendments made by section 2663 shall be effective on the date of the enactment of this Act; but none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date.

(PubL. No. 98–369, 98 Stat. 1162, § 2663(b)); *Bodimetric,* 903 F.2d at 489. As a literal interpretation of § 405(h), as revised, would change or affect "a right,

liability, status, or interpretation" existing prior to the enactment of the "Technical Corrections," the Circuit courts to have addressed this issue have held that the original understanding of § 405(h) continues to control. *Bodimetric,* 903 F.2d at 488–90; *Midland,* 145 F.3d at 1003–04. The Court finds the reasoning of these courts to be persuasive as to this issue and concludes that § 405(h) precludes actions arising under the Medicare Act, which are brought pursuant to the Court's diversity jurisdiction.

### 2. Claims Arising Under the Medicare Act

■ The Court finds that the specific claims brought by Plaintiff in the instant action are barred as they "arise under" the Medicare Act. In *Heckler v. Ringer,* the United States Supreme Court held that claims arising under other statutes may be barred by § 405(h) if they are also "inextricably intertwined" with benefits determinations made under the Medicare Act. *Heckler v. Ringer,* 466 U.S. 602 at 622–24, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Plaintiff's Second Amended Complaint alleges that Defendant intentionally tried to harm Plaintiff by suspending payments, denying claims and conducting audits. Notably, however, these are the precise functions which Congress has authorized fiscal intermediaries to perform. As such, nowhere does the complaint allege concrete acts which are "outside the scope" of the Medicare program. In order to find for the Plaintiff in this matter, the Court would necessarily be compelled to decide that Defendant's denial of Plaintiff's claims for reimbursement were unjustified. As Plaintiff's claims are "inextricably intertwined" with a Medicare benefits determination, the claims arise under the Medicare Act and are barred by § 405(h), which precludes diversity actions brought outside of the statutory scheme.

Although the Eleventh Circuit has not ruled directly on the issue,[1] the Seventh Circuit also reached this conclusion in *Bodimetric,* a virtually identical case in which a Medicare provider brought a diversity-based tort claims against a private insurer acting as a Medicare fiscal intermediary. The provider alleged the denial of claims based, *inter alia,* on fraud, fraudulent concealment and negligent misrepresentation. *Bodimetric,* 903 F.2d at 481–485. Similarly, the Eighth Circuit held in *Midland,* that a Medicare provider alleging tortious interference against a Medicare carrier could not avoid the statutory scheme provided by Congress by attempting to recharacterize a cause of action which was, at bottom, a claim for the denial of funds owed to it. *Midland* 145 F.3d at 1004.

> Regardless of its intent, Mutual [the Medicare carrier] cannot be held liable for tortious interference if it had a right to deny the hospital's claims ... The district court thus correctly concluded

---

1. The Eleventh Circuit has indirectly addressed the meaning of claims "arising under the Medicare Act" in a different context. *United States ex. rel. Body v. Blue Cross and Blue Shield of Alabama, Inc.,* 156 F.3d 1098 (11th Cir.1998). In *Body,* the Eleventh Circuit held in a *qui tam* action that claims, which do not seek *payment* from the government, cannot be brought under § 405(h) and are thus not barred by its jurisdictional limitations. *Body,* 156 F.3d at 1104. Having drawn this distinction, the Court characterized the Supreme Court precedent regarding the "arising under" requirement in the following manner. "Our examination reveals that the Supreme Court's justification for broadly construing the 'claims arising under' language of subsection 405(h) is to prevent beneficiaries from circumventing the administrative process by creatively styling their benefits claims as collateral constitutional or statutory challenges not 'arising under' Medicare." *Id.* As such, the Eleventh Circuit clearly recognizes the rationale underlying the "inextricably intertwined" and "arising under" requirements of the Medicare Act.

that hearing Midland's tortious interference claim against Mutual would mean reviewing the merits of Mutual's Medicare claims decisions.

*Midland,* 145 F.3d at 1002.

■ Under § 405, Plaintiff may continue to appeal Defendant's determinations within the statutory framework and ultimately appeal to a federal court. Plaintiff, however, has chosen to file the present diversity-based action, stating that "[n]o review is requested nor is an affirmation, modification or reversal of the Defendant's individual actions sought." (Def.'s Resp. at 2.) In *Bodimetric,* the Seventh Circuit clearly articulated the policy rationale for the preclusion of tort claims based on the denial of Medicare benefits.

> A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.

*Bodimetric,* 903 F.2d at 487.

In light of the persuasive case law and policy grounds articulated by the Circuits to have addressed this issue, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims.

### B. Official Immunity

Defendant argues that, as a fiscal intermediary, it is entitled to official immunity from discretionary governmental functions delegated to it. (Def.'s Mot. at 15.) Plaintiff responds, however, that fiscal interme-

diaries are only entitled to immunity to the extent that the government is exposed to financial risk. (Pl.'s Resp. at 3.) Plaintiff further suggests that at this point it cannot be determined to what extent, Defendant rather the Government, is financially responsible for reimbursement. Defendant responds that Plaintiff's argument addresses the issue of sovereign immunity rather than official immunity, which was raised in its pleading.[2]

■ The distinction between the two doctrines is elucidated in a district court case from this Circuit where a medical equipment supplier sued a Medicare fiscal intermediary for malicious prosecution.

> Although Blue Cross and the individual defendants are all entitled to immunity, their immunity derives from different sources. The former is protected by sovereign immunity while the latter are protected by official immunity. Sovereign immunity protects the government from financial liability. *Nu–Air Mfg. Co. v. Frank B. Hall & Co.,* 822 F.2d 987, 996 (11th Cir.1987) cert. denied, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). Official immunity generally protects individual government officials from suit to the extent they acted within the scope of their official duties. *Id.*

*Livingston v. Blue Cross Blue Shield of Alabama,* 788 F.Supp. 545, 547–548 (S.D.Ala.1992). Defendant implicitly argues that the concept of official immunity should apply even though the defendant in this case is an entity rather than an individual. Several circuits have held that this is appropriate. *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 72 (2d Cir.1998); *Bushman v. Seiler,* 755 F.2d 653, 655 (8th Cir.1985.) On the other hand, courts from this district have held in dis-

---

**2.** Defendant states in its Reply that "Palmetto never raised the issue of sovereign immunity in [its] Motion." (Def.'s Reply at 2.)

putes between fiscal intermediaries and providers that official immunity may not apply where individuals are not named as defendants in the complaint. *Neurological Associates–H. v. Bowen,* 658 F.Supp. 468, 470 (finding that although sovereign immunity applied, official immunity did not because individuals were not named in complaint). As this Court has already found that the Plaintiff lacks subject matter jurisdiction to hear the action, it declines to reach the issue of whether the doctrine of official immunity may apply to an entity, namely Palmetto the fiscal intermediary named as Defendant in this case.

Accordingly, it is

**ORDERED AND ADJUDGED** that

(1) Motion to Dismiss Second Amended Complaint (D.E.28), filed July 21, 2000, by Defendant Blue Cross and Blue Shield of South Carolina, Corporation, d/b/a Palmetto Government Benefit Administrators ("Palmetto") is **GRANTED** without prejudice consistent with the terms of this order.

(2) This case is **CLOSED.**

(3) All pending motions not ruled upon separately are **DENIED** as moot.