**SINISCAL et al.**
v.
**UNITED STATES et al.**

**UNITED STATES et al.**
v.
**SINISCAL et al.**

No. 13681.

United States Court of Appeals
Ninth Circuit.

Nov. 14, 1953.

As Amended on Denial of Rehearing
Dec. 29, 1953.

Louis E. Schmitt, Francis F. Yunker, Portland, Ore., for appellant.

Roger P. Marquis, Attorney, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Washington, D. C., Fred W. Smith, Attorney, Dept. of Just., Washington, D. C., Henry L. Hess, U. S. Atty., Edward B. Twining, Asst. U. S. Atty., Portland, Ore., for appellee U. S.

Wilber Henderson, Portland, Ore., for appellees Henry B. and Elizabeth A. Taylor.

Davidson & Nikoloric, Robert L. Weiss, Irving Rand, Portland, Ore., for appellee Brenner.

Before DENMAN, Chief Judge, and McCORMICK and GOODMAN, District Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the district court which ordered all transactions involved in a transfer of allotted Indian lands set aside as void, and a cross-appeal from that portion of the judgment which ordered the return of the consideration to the purchaser.

The lands in question are located near Gold Beach, Oregon. Jasper Grant and Harold F. Thornton were the heirs of five original Indian allottees of the land which is held in trust by the United States Government. Patrick Gray, a forester employed in the Forestry Division of the Indian Office, made an appraisal of the land in question in May, 1951, to determine its value as timber land. The appraisal set was $135,000.00, a figure which the court found to be "grossly inadequate."

In the same month, S. D. Alexander, a white man, contacted Elmer A. Reed, an Indian, about the possibility of purchasing the land in suit. A deal was arranged whereby Reed was to purchase the land and deed it over to Alexander. Alexander was to pay Reed $12,500.00 for his services. Under the applicable law and regulations an Indian could buy this land at its appraised value, but a non-Indian could only buy it after the property had been offered for public bids. 25 U.S.C.A. § 372; 25 C.F.R. 241.11, 241.17–241.33.

In July, Reed and Alexander, accompanied by Grant and Thornton, Indians and beneficial owners of the property which was held by the United States under Trust Patents, appeared in the Indian Office. There they were informed that the projected deal could not go through because the ultimate purchaser was Alexander—a white man—and a public offer for bids would be necessary. However, the officers of the Indian Bureau secured from the beneficial owners a consent to sell the lands at $135,000, in order to complete the Bureau records and "in the event in the future a purchaser could be found * * *."

Also in July, one John C. Blanford approached Reed about making a similar deal and was refused because of Reed's pre-existing contract with Alexander. Fred M. Marsh was also interested in making the deal and was evidently working with Blanford. Reed suggested that since his daughter, Mrs. Ernestine Siniscal, was an Indian, she might be able to make a deal for Blanford.

Reed then talked to Mrs. Siniscal and suggested that she try to put through the deal for $25,000, for herself. When contacted, by Blanford, Mrs. Siniscal made a deal whereby she was to buy the land and then was to sell it to persons whom Blanford was to contact. Mrs. Siniscal was to receive $25,000. for her services.

Blanford then sought out William F. Brenner, seeking financing for the deal. Brenner contacted Mr. and Mrs. Henry B. Taylor, the ultimate purchasers of the property. Arrangements were made to examine the property. A timber cruiser went along on this examination and there was talk that there was 30 or 40 million board feet of timber in the tract worth around $10. per thousand board feet, making the tract worth at least $300,000.

All of the parties to the deal were aware of the fact that the land could not be purchased except at a public sale by any but an Indian. The arrangement ultimately made was that Mrs. Siniscal should purchase the land through the Indian Office, that she should then reconvey it to the Taylors, and that $25,000. should be put in escrow to be delivered to Mrs. Siniscal when the Taylors received a marketable title. In pursuance of this arrangement, Mrs. Siniscal appeared at the land office and prepared an application form for the release of restrictions on the land to be purchased. The purpose of this form is to establish the competency of the applicant so that restrictions upon the property can be removed and the Indian safely entrusted with its future disposition. In filling in financial information, she claimed ownership to property which in fact was owned by her mother and father and income which was in fact her father's. In answer to the question, "Have you made an agreement to sell your land?" (meaning the land to be purchased), she answered no.

The Indian Bureau officers then prepared an instrument entitled an "Order Transferring Inherited Interests in Indian Lands." This order is used where inherited allotted land is sold by one Indian to another. It causes a change to be made in the government records to reflect the new beneficial ownership, the fee remaining in trust in the United States. The standard form used for this purpose expressly provides that the land remains under the restrictions, but in this case this clause of the form was altered to read: "* * * subject to the express condition that these lands shall

not be alienated, sold, or encumbered without the consent of the Secretary of the Interior."

Meanwhile, the Taylors, Brenner, Blanford, and Marsh met in Portland where final arrangements were made. The $25,000. was placed in escrow with the United States National Bank of Portland. Taylor purchased a Cashier's check for $135,000 which was used to pay for the land. Mrs. Siniscal then executed a deed to the Taylors, and the Taylors gave Brenner and Marsh an option to purchase the property at $300,-000. The Taylors went into possession and had done some preliminary logging operations and felled some trees prior to the commencement of this action.

The United States, in its capacity as trustee for Grant and Thornton, instituted this action to recover the lands and to set aside all of the above transactions. Named as defendants were: Mrs. Siniscal, the Taylors, Brenner, Reed, Marsh and six Does. Alexander entered the case as an intervenor.

The district court found, in addition to the above facts, that no patent in fee to the lands in question had ever been issued by the United States; that Mrs. Siniscal was acting as a mere conduit or agent for the Taylors and not in her own behalf and hence was not an Indian within the meaning of 25 C.F.R. Sec. 241.11; that good cause exists for the return of the $135,000 to the Taylors with interest at 6%. The judgment of the district court provided (1) that all of the instruments involved were null and void; (2) that the Taylors were to be paid the sum of $135,000 plus interest at 6% from July 18, 1952, from the following sources (a) moneys belonging to Grant and Thornton on deposit with the Portland Trust & Savings Bank, appointed by a state court as Conservator, (the undissipated proceeds of the transfer) and (b) the balance from the proceeds of a public sale of the property in question; and (3) that the complaint in intervention of Alexander be dismissed.

■ Mrs. Siniscal and Reed appear to have appealed from the entire judgment. Their notice of appeal, dated November 6, 1952, states that they are appealing "from the final decree * * * made and entered herein on the 18th day of September, 1952. * * *" An examination of the record reveals no final decree entered on September 18th. However, it appears that there is but one appealable final decree in the record, that of the judgment of July 18, 1952, which was sufficiently described in its final character. Cf. Lemke v. United States, 346 U.S. 325, 74 S.Ct. 1. A motion to amend the findings and judgment, made on July 28, 1952, was denied by the court on October 1, 1952, thus extending the 60 day time to file the notice of appeal. Hence the notice of appeal was timely. The United States filed an equally timely cross-appeal from the second part of the judgment.

■■ The appeal of Reed and Mrs. Siniscal is without merit. It is abundantly clear from the record that Mrs. Siniscal was not buying the property in her own right but was acting as the traditional "man of straw" for the benefit of the Taylors. She was an agent of the Taylors. That an agent acts on behalf of his principal and not on behalf of himself is fundamental agency law. 2 Am.Jr. 14. To hold other than did the court below would frustrate the regulations requiring that the land be offered for public bids before it may be sold to a non-Indian. The court made an inadvertent choice of phraseology when it ruled that Mrs. Siniscal was a "non-Indian." While she is an Indian, she was not acting in that capacity in purchasing the land but was acting as an agent of the Taylors, non-Indians.

■■ Equally without merit is the claim of these two appellants that the judgment entered against them cannot stand because they were not represented by the United States Attorney. It is true that 25 U.S.C.A. § 175 provides that "In all States and Territories where there are reservations or allotted Indians the United States district attor-

ney [1] shall represent them in all suits at law and in equity", and that there are reservations and allotted Indian lands in Oregon. Thus, they contend it was the duty of the United States Attorney for the District of Oregon to represent Reed and Mrs. Siniscal in this action.

Since the suit against Siniscal and Reed was prosecuted by the United States Attorney, it is obvious he could not represent them. Congress must have considered such a situation. We think 25 U.S.C.A. § 175 is not mandatory and that its purpose is no more than to insure the Indians adequate representation in suits to which they might be parties. These Indians are citizens of the United States by the Act of June 2, 1924, 43 Stat. 253. They are sued as persons acting individually and not with reference to any right in which the United States or any officer thereof is in the position of a trustee or guardian. They were ably represented by counsel. It is not a situation requiring for them a guardian ad litem.

In its cross-appeal, the government contends that where instruments purporting to divest its title to Indian lands held by it in trust are void because of fraud in their procurement or because they violate laws and regulations for the Indians' protection, the government may not be required to restore the consideration paid for the conveyances nor may it be required to sell the land for that purpose.

The government is at least partially correct in its argument. No portion of the public treasury may be used to refund the purchase price of lands subject to the control of the United States where the purchase is set aside as having been made in violation of the applicable laws or regulations. United States v. Trinidad Coal Co., 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640; Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820. The question of restoration of the consideration is irrelevant to the right of the government to cancel the wrongful sale. Hall v. United States, 10 Cir., 201 F.2d 886. Any restoration of consideration must come from the Indian beneficial owners. Heckman v. United States, supra. Neither can the government be compelled to sell lands held in trust for its Indian wards, for to do so would defeat the purpose of the statute in giving the Secretary of the Interior absolute discretion over the sale of these lands. 25 U.S.C.A. § 372.

However, as to the approximately $80,000 which is deposited in the Portland Trust & Savings Bank, the state created conservator for Grant and Thornton, the Indian beneficial owners, a different situation exists.

The district court obtained no jurisdiction over the bank and its order that the bank should pay over the deposit is void. Our decision is without prejudice to any right the Taylors may have in a suit against the bank.

The judgment is affirmed in so far as it voids all transactions relating to the transfer of the land. The judgment is reversed in so far as it orders the payment of $135,000 together with interest at the rate of 6% per annum from July 18, 1952, to Henry B. Taylor and Elizabeth A. Taylor, payment to be made from the following sources: The money on deposit with the Portland Trust and Savings Bank as Conservator of Jasper Grant and Harold F. Thornton, and the proceeds of the sale of the lands and timber involved in this suit.

---

1. The terms "United States district attorney" and "United States Attorney" are used interchangeably in the statutes, with the latter officially accepted as a title today. See Revisers' Note to 28 U.S.C. § 501.