PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-2132

———————

NICHOLE MEDICAL EQUIPMENT &
SUPPLY, INC.,

Appellant

v.

TRICENTURION, INC., formerly known as
TRICENTURION, LLC;  NATIONAL HERITAGE
INSURANCE COMPANY, doing business as
NHIC CORP.

On appeal from the United States District Court
For the Eastern District of Pennsylvania

District Court No. 2:10-cv-00389

District Judge:  The Honorable Cynthia M. Rufe

Argued on April 20, 2012

Before:  MCKEE, *Chief Judge*, SLOVITER,
*Circuit Judge*, and O'CONNOR, *Associate
Justice* (Ret.)[*]

(Filed:  September 13, 2012)

——————————

[*] Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

1

David M. Hollar, (Argued)  Esq.
Villari, Brandes & Kline,
8 Tower Bridge, Suite 400
161 Washington Street
Conshohocken, PA 19428

*Counsel for Appellant*

Zane David Memeger, Esq.
United States Attorney
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Margaret L. Hutchinson, Esq.
Chief, Civil Division
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

David A. Degnan, Esq. (Argued)
Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Appellees*

## OPINION

MCKEE, *Chief Judge*.

Nichole Medical Equipment and Supply Company ("Nichole Medical") appeals the district court's dismissal of an action that Nichole Medical brought to recover damages for various state and federal claims. The district court dismissed the suit for lack of subject matter jurisdiction and because Nichole Medical had not stated a claim for which relief could be granted. For reasons that follow, we agree. We also agree that all of Nichole Medical's claims arise under the Medicare Act and that the Defendants/Appellees are therefore immune from suit as officers or employees of the Secretary of the Department of Health and Human Services. Accordingly, we will affirm the district court's dismissal of the complaint.

## I. Statutory and Regulatory Background

This suit originates from relationships that were created under the Medicare Act, 42 U.S.C. § 1395 *et seq*., ("Act"). The Act is administered through private organizations that contract with the Secretary of the Department of Health and Human Services.[*] 30 FED. PROC. §71:746. Pursuant to statutory provisions in effect prior to October 1, 2005, Medicare Part B was administered by organizations known as "carriers."[†] *Id*. Carriers entered into contracts with the Centers for Medicare and Medicaid Services ("CMS"). The obligations undertaken by carriers under those contracts include paying for items Medicare suppliers provide to Medicare beneficiaries, adjusting any incorrect payments, and recovering overpayments when the carrier concludes an overpayment was made for a covered Medicare benefit. 42 C.F.R. §§ 421.100, 421.200; *see also* 30 Fed. Proc. §§ 71:747, 71:754.

---

[*] The U.S. Department of Health and Human Services ("DHHS"), through the Secretary, exercises its authority to administer Medicare through the Centers for Medicare and Medicaid Services. *Arkansas Dept. of Health and Human Services v. Ahlborn*, 547 U.S. 268, 275 (2006).

[†] Medicare Part B (Medical Insurance) covers ambulance, physician, laboratory, durable medical supplies and other non-institutional services. 3 Health L. Prac. Guide §45:24 (2011).

As a result of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, the obligations previously imposed on carriers are now undertaken by Medicare Administrative Contractors ("MACS"). *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173,§911(e), 117 Stat. 2066, 2256 (2003).[‡] MACS enter into contracts with CMS to perform various duties pursuant to 42 U.S.C. §1395kk-1. 42 U.S.C. §1395kk-1; *see also* 42 C.F.R. §421.401. Those duties include assisting in the administration of the Medicare Integrity Program. 42 U.S.C. §1395kk-1; *see also,* 30 Fed. Proc. §71:746.

Pursuant to the Medicare Integrity Program, entities known as "Program Safeguard Contractors" ("PSCs") contract with CMS to perform various program integrity tasks to "safeguard" Medicare payments on behalf of the Secretary. *See* 42 U.S.C. §1395ddd(a). PSCs responsibilities include reviewing Medicare payments for potential fraud and ensuring that amounts billed under the Medicare program are appropriate and supported by proper documentation. *See* 42 U.S.C. §1395ddd(b).

This auditing obligation thus requires MACs and PCSs to determine if amounts paid under Medicare "are reasonable and necessary in accordance with Medicare coverage policies and program instructions." 42 C.F.R. §421.500. In discharging this obligation, CMS or a Medicare contractor can suspend payments under the Act in whole or in part "if CMS or the Medicare contractor possesses reliable information that an overpayment existed or that the payments to be made may not be correct, *although additional information may be needed for a determination.*"[§] 42 C.F.R. §405.371(a)(1) (emphasis added). A Medicare contractor is also authorized to offset or recoup Medicare payments, in whole or in part, if it is *"determined that the provider or supplier to whom payments are to be made has been overpaid."* 42 C.F.R. §405.371(a)(3) (emphasis added).

---

[‡] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 amended the guidelines under which Medicare claims were processed and, in doing so, changed the terms identifying administering organizations. *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, sec. 911(e), 117 Stat. 2066, 2256 (2003); *see also MacKenzie Medical Supply, Inc. v. Leavitt*, 506 F.3d 341, 344 n.1 (4th Cir. 2007) ("Pursuant to §911 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, . . . with an effective date of October 1, 2005, most of the carrier responsibilities have been transferred to entities now labeled medicare administrative contractors.").

[§] A Medicare contractor includes, but is not limited to, a carrier, a MAC and/or a PSC. 42 C.F.R. §405.370.

At all times relevant to our inquiry, Nichole Medical was a durable medical equipment supplier,[**] National Heritage Insurance Company ("NHIC") was a carrier and/or a MAC[††] and TriCenturion was a PSC. *See* 42 U.S.C. §1395u.

## II.  Factual Background

This dispute arises from an audit TriCenturion conducted of Nichole Medical's in the course of TriCenturion discharging its obligations under the Act as a PSC. After examining records obtained from Nichole Medical's office, TriCenturion concluded that Nichole Medical "might" be improperly billing Medicare for medical equipment such as the motorized wheelchairs and hospital beds that Nichole Medical provided to Medicare beneficiaries. TriCenturion's examination of Nichole Medical's records also caused TriCenturion to conclude that Nichole Medical had received overpayments from Medicare.  *Id*. at p. 00007, ¶26.[‡‡]  TriCenturion also concluded that Nichole Medical had not maintained sufficient medical records to establish the reasonableness and/or medical necessity of some of the medical equipment it had supplied to Medicare beneficiaries.  *Id*. at 00037.

Accordingly,  TriCenturion directed Nichole Medical's prior carrier, HealthNow, to withhold payments to Nichole Medical in an effort to recoup the amount that TriCenturion believed had been overpaid to Nicole

---

[**] In its simplest form, a durable medical equipment supplier provides items such as hospital beds, wheel chairs, etc., to Medicare beneficiaries following the receipt of a medical prescription for that particular item. *See United States. v. Isiwele*, 635 F.3d 196, 198 (5th Cir. 2011). After providing the equipment to the Medicare beneficiary, Medicare reimburses the supplier for the medical equipment it provided to fill the prescription. *See id*.

[††] Nichole Medical alleged that NHIC is a "carrier" which Appellees appear to insinuate is an improper distinction. *See* Appellees Brief, p. 4 n. 1.  However, the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 was not effective until October 1, 2005, and the transition from carriers to MACs occurred between October 1, 2005, and October 1, 2011. *See*  42 C.F.R. §421.400(a).  The conduct underlying Nichole Medical's complaint begins as early as 2002.

[‡‡] Nichole Medical asserts that this was TriCenturion's attempt to "bootstrap" its claims of inappropriate billing to a then-pending action filed by United States against Nichole Medical for fraudulent billing with regard to incontinence products. *Id*. at 00006, ¶25. Nichole Medical alleges that a settlement agreement reached in that action permitted Nichole Medical to continue business with Medicare so long as it successfully paid the settlement payment.

5

Medical. *Id*. at 00007, ¶27. TriCenturion determined the offset amount by calculating the actual overpayment of several specific claims. It then used those claims as a representative sampling of Nichole Medical's claims and extrapolated an overpayment amount for all of Nichole Medical's relevant claims from that sample. *Id*. at 00019.

In addition to the offset, TriCenturion also informed the Attorney General's Office that Nichole Medical had improperly requested reimbursement for certain medical devices delivered to Medicare beneficiaries to fill their prescriptions. TriCenturion persisted in its belief that payments had been improperly made to Nichole Medical even after the Attorney General found no evidence of fraud and refused to prosecute. *Id*. at 00006, ¶23.

For reasons that remain unclear, but presumably because the Attorney General refused to prosecute, HealthNow stopped withholding payments to Nichole Medical and did not attempt to recoup any further payments. *Id*. at 00066. However, after NHIC succeeded HealthNow, TriCenturion instructed NHIC to re-institute the offset. *Id*. According to Nichole Medical, reinstituting the offset eventually forced it out of business. *Id*. Nevertheless, after it went out of business, Nichole Medical pursued an appeal of TriCenturion's determination that it (Nichole Medical) had been overpaid.[§§]

The administrative law judge who was handling that appeal subsequently determined that Nichole Medical was entitled to reimbursement on some of the appealed claims for which payment had been withheld or offset, but not all such claims.[***] *Id*. at 00035. The ALJ

---

[§§] That procedure is allowed under the Act.

[***] TriCenturion's post-payment audit of 39 randomly-selected claims resulted in a finding that benefits were improperly paid to Nichole Medical for the sale of 19 motorized wheelchairs and the rental of 20 hospital beds. *Id*. at 00035-6. TriCenturion calculated an actual overpayment amount of $98,501.47. *Id*. Additionally, using these 39 claims against the universe of 467 claims, TriCenturion applied a statistical methodology to obtain an extrapolated overpayment amount totaling $485,374.54. *Id*. When TriCenturion and NHIC reinstituted the withholding of benefits to offset this overpayment, Nichole Medical appealed arguing that those 39 claims were inappropriately re-opened and that the extrapolated overpayment amount was improper. *Id*. at 00007, ¶33. The ALJ reviewed separately each individual claim and the sampling process. *Id*. at 00038-56. When reviewing each individual claim, the ALJ made a

also ruled that TriCenturion had failed to: (i) provide proper notice of the post-payment audit; (ii) establish new evidence justifying the post-payment audit; and (iii) fully explain the methodology used for the statistical sampling that resulted in the determination that Nichole Medical had been overpaid or improperly paid under the Act. *Id*. at 00035-55. The ALJ found that the extrapolated amount determined by examining the 39 claims that were sampled had no legal force because it was impossible to recalculate the sampling. *Id*. at 00054-6.[†††]

The Medicare Appeals Council ("Council") reviewed the ALJ's decision and found that the ALJ had erred in determining which of the 39 claims was properly paid because all 39 claims had been reopened and reviewed improperly. *Id*. at 00018-25.

After the Council entered that ruling, Nichole Medical filed this suit against TriCenturion and NHIC alleging that TriCenturion had wrongfully withheld Medicare payments owed to Nichole Medical for equipment it had supplied to Medicare beneficiaries and that that caused Nichole Medical's insolvency. *Id*. at 00007. Nichole Medical also claimed that "TriCenturion conducted an unannounced, unauthorized and illegal search and seizure of Nichole Medical's Medicare records" when it audited Nichole Medical's cost reports and records.[‡‡‡] Appx., p. 00006, ¶21.

_____

favorable ruling on 2 wheelchairs and 15 beds but the ALJ found the remaining claims were improperly paid to Nichole Medical, thus, resulting in overpayment. *Id*. at 00035.

[†††] The ALJ held "the extrapolated overpayment, which resulted from the statistical process in this case, is *nullius juris*, not because the statistical methodology was flawed or invalid but because the process, which the regulations require the government to follow, were *[sic]* not followed, thereby denying [Nichole Medical] the benefit of the law and regulations. In addition, this decision declines to uphold the statistical extrapolation because the contractor failed to explain fully the methodology that was applied, and therefore this decision cannot meet its responsibility to recalculate a new extrapolated amount." *Id*. at 00051.

[‡‡‡] As noted by the administrative law judge, "Medicare rules do not contemplate the exclusion of improperly obtained evidence in the fashion of the constitutional exclusion of evidence in criminal proceedings. When the evidence comes into the record by whatever means, it may be considered." Appx., p. 00038. The administrative law judge did not decide the issue but acknowledged "a fair argument can be made that [Appellees] committed no regulatory violations when it sought additional documentation from whatever source possible." *Id*.

According to Nichole Medical's allegations, it was forced into insolvency because TriCenturion "developed and implemented a business pattern and practice of ignoring and failing to follow statutory and regulatory guidelines and procedures with regard to its audit activities." *Id.* at 00009, ¶¶37, 40. Nichole Medical asked the district court to award compensation "including, but not limited to, past and future damages of an economic nature, including: attorneys fees, costs, loss of sales, loss of revenue, loss of profits, and other expenses." *Id.* at ¶43. Nichole Medical bases its claim for damages on various state law torts and breach of the statutory duty of care pursuant to 42 U.S.C. §1320c-6(b).[§§§] *Id.* at 00065.

The district court granted a motion to dismiss based on Nichole Medical's failure to exhaust its claims before the ALJ and the Council as required by the Act. *Id.* at 00070-77. Alternatively, the district court concluded that the complaint should be dismissed because the challenged conduct was within the scope of TriCenturion's and NHIC's official duties under the Act and that they were therefore immune from suit under the Medicare Act.[****] *Id.* at 00070-77.

This appeal followed.

**III.    Discussion**

**A.    Jurisdiction**

**1.    Judicial Review under the Act.**

42 U.S.C. §405(h) is incorporated into the Act pursuant to 42 U.S.C. §1395ii. Section 405(h) provides

> [t]he findings and decision of the [Secretary] after a hearing
> shall be binding upon all individuals who were parties to such
> hearing. No findings of fact or decision of the [Secretary]

---

[§§§] The alleged torts include: negligence; unjust enrichment; intentional interference with contractual relations; extreme and outrageous conduct; malicious prosecution; and trespass (the last two claims were asserted against TriCenturion only).

[****] TriCenturion and NHIC were and continue to be represented by the United States Department of Justice as a result of their Medicare contracts. *See* 28 U.S.C. §517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.").

8

shall be reviewed by any person, tribunal, or governmental agency ***except as herein provided***. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under <u>section 1331 or 1346 of Title 28</u> to recover on any claim arising under this subchapter.

*Id*. (emphasis added). Section 405(h) thus limits judicial review of claims "arising under" the Act. *See Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1002-3 (8th Cir. 1998). In *Midland Psychiatric Association, Inc.*, the Eighth Circuit explained: "the last four words of §405(h)'s second sentence—'except as herein provided'—refer to the rest of 42 U.S.C. §405, particularly §405(g) . . . ." *Id*. (internal citations omitted). Section 405(g) provides that

[a]ny individual, ***after*** any final decision of the Commissioner [is] . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

*Id*. at §405(g) (emphasis added). "Section 405(h) purports to make exclusive the judicial review method set forth in §405(g)." *Shalala v. Illinois Council on Long Term Care, Inc*., 529 U.S. 1, 10 (2000). We have previously explained that: "there is no judicial review of final agency action under the district court's federal question jurisdiction [under the Act]." *Fanning v. United States*, 346 F.3d 386, 402 (3d Cir. 2003).

Nichole Medical argues that Congress only intended §405(h) to bar federal jurisdiction of suits under 28 U.S.C. §§1331 and 1346 and, therefore, its suit against TriCenturion and NHIC was improperly dismissed because the court had diversity jurisdiction under 42 U.S.C. §1332.

When it was originally enacted, however, §405(h) barred virtually all grants of jurisdiction under Title 28. Subsequent "technical corrections" were made in 1976, which resulted in the current wording of that section. We agree that the language may at first appear to bar only jurisdiction under §§1331 or 1346 of Title 28. However, it is clear that the changes enacted in 1976 were intended only as "technical corrections" and they

9

were therefore not intended to make any substantive change in the statute. *See Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 488 (7th Cir. 1990). Accordingly, we hold that §405(h) continues to bar virtually all grants of jurisdiction under Title 28.

In *Bodimetric,* the Seventh Circuit explained: "In this section, Congress clearly expressed its intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions. Any other interpretation would contravene section 2664(b) by 'changing or affecting a right, liability, status, or interpretation' of section 405(h) that existed before the Technical Corrections were enacted." 903 F.2d. at 489 (quoting *Griffin v. Oceanic Contractors, Inc*., 458 U.S. 564, 571 (1982)). Similarly, in *Midland Psychiatric Association*, the Court of Appeals for the Eighth Circuit found "the jurisdictional bar imposed by sentence three of §405(h) extends to claims based on diversity of citizenship" because "[w]hen Congress revised sentence three, it labeled the amendment a technical correction, and at the same time made clear that no substantive change in the law was intended." 145 F.3d at 1004.

We therefore agree with the district court's conclusion that Nichole Medical's attempt to rely on the court's diversity jurisdiction by filing under §1332 is barred by §405(h) if those claims "arise under" the Medicare Act. Congress clearly prohibited federal courts from exercising subject matter jurisdiction or diversity jurisdiction over claims arising under the Act.

### 2. Nichole Medical's Claims Arise "under the Act."

We exercise plenary review over the district court's dismissal of a complaint for lack of subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial attack to the court's jurisdiction, "courts must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id*. Moreover, Nichole Medical carries the burden of convincing us that Congress has not barred federal courts from exercising subject matter jurisdiction over this suit.

Nichole Medical's claims for damages are supported by allegations that the defendants: (i) wrongfully entered Nichole Medical's premises to review its records; (ii) improperly withheld payments to offset purported overpayments; and (iii) unnecessarily informed the CMS of their concerns

with Nichole Medical's billing practices. Appellant's Brief, pp. 10-16. Despite those allegations and their relationship to Medicare, Nichole Medical argues that its claims do not arise under the Act because it is not asking a court to determine "whether Medicare should pay the claims as submitted, how much should be paid, or whether the [Appellees'] conduct was illegal, wrongful or improper" and "at bottom [it is] not seeking to recover benefits" but rather it is seeking damages arising from Appellees' "unlawful" conduct.[††††] *Id*. Of course, that argument totally ignores the underlying reality that all of the actions complained of are squarely rooted in, and arise from, the relationship between the parties. That relationship is firmly rooted in the Act and certainly arises from it.

In attempting to argue the contrary proposition, Nichole Medical relies on *Ardary v. Aetna Health Plans of Southern California, Inc.*, 98 F.3d 496 (9th Cir. 1996), wherein the Court of Appeals for the Ninth Circuit found state law claims did not arise under the Act because, at bottom, they were not seeking to recover benefits. *See* Appellant's Brief, pp. 15-16. However, that case involved a wrongful death action and the court merely concluded that the Act did not preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider. *See Ardary*, 98 F.3d at 498. The plaintiffs there were seeking compensatory and punitive damages on the grounds that the Medicare provider improperly denied emergency medical services and misrepresented its managed care plan. *Id*.

Moreover, the Court of Appeals for the Ninth Circuit subsequently clarified the limited nature of the holding in *Ardary* by explaining that it "does not extend beyond patients and torts committed in the sale or provision of medical services." *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1113 (9th Cir. 2003). That is simply not this case.

The Supreme Court has defined claims that "arise under" the Act as claims that are "inextricably intertwined" with a claim for benefits or claims where "both the standing and the substantive basis for presentation" is the Act. *Shalala*, 529 U.S. at 12. A claim is "inextricably intertwined" if it does not involve issues separate from the party's claim that it is entitled

---

[††††] Nichole Medical's allegations that the Appellees' conduct was unlawful, alone, are entirely insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Fowler v. UPMC Shadyside*, 578, F.3d 203, 210-11 (3d Cir. 2009) ("The District Court must accept all the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

to benefits and/or if those claims are not completely separate from its substantive claim to benefits. *See Cathedral Rock of North College v. Shalala,* 223 F.3d 354, 363 (6th Cir. 2000).

A claim can arise under the Medicare Act even if the substantive relief sought is not permitted by the Act. *See Heckler v. Ringer*, 466 U.S. 602, 623 (1984). As the Ninth Circuit explained in *Kaiser*, "[t]he fact that [Appellant] seek[s] damages beyond the reimbursement payments available under Medicare does not exclude the possibility that [its] case arises under Medicare. Simply put, the type of remedy sought is not strongly probative of whether a claim falls under §405(h)." 347 F.3d at 1112.

*Bodimetric Health Services, Inc. v. Aetna Life & Casualty* is illustrative of this point and "on all fours" with Nichole Medical's attempt to argue that its claims do not "arise under" the Act. There, a Medicare intermediary refused to pay certain claims and, as a result, Bodimetric went out of business. *Bodimetric*, 903 F.2d 480, 482-83 (7th Cir. 1990). Bodimetric sued the intermediary for fraud, fraudulent concealment, breach of contractual relationship, tortious breach of the implied covenant of good faith and fair dealing and intentional harm to property interest. *Id*. The Court of Appeals for the Seventh Circuit rejected Bodimetric's assertion that its tort claims did not arise under the Act. The court explained: a "party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits." *Id*. at 487 ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined."). We agree.

Here, based on its own recitation of facts, it is clear that Nichole Medical's action is, at bottom, nothing more than an argument that it was entitled to payments under the Medicare program, those payments were delayed or denied, and Nichole Medical suffered damages as a result. Thus, these claims are not only "inextricably intertwined" with Nichole Medical's claim for benefits, they derive from (and are firmly rooted in) the Act. *See, e.g. Midland Psychiatric Assocs., Inc*., 145 F.3d at 1005 (finding a tortious interference claim to be "inextricably intertwined" with a Medicare benefits determination because "[a]t bottom, [Appellant] is claiming [the Medicare carrier] should have paid for its services."); *Bodimetric*, 903 F.2d at 486 ("[Appellant's] grievance is, at bottom, a challenge to [the intermediary's] approach to processing claims. Judicial review of such a challenge seems to be foreclosed."); *Fanning*, 346 F.3d at 400 (It is "apparent that both the standing and the substantive basis for the

claim . . . are rooted in, and derived from, the Medicare Act" when the claim was wholly dependent on whether the parties qualified as a primary plan as defined by the Act).

### 3. Judicial Review of Nichole Medical's Claims

Nichole Medical concedes that it did not raise the tort and contract claims that this suit is based on during its Medicare appeals process.[‡‡‡‡] To obtain judicial review under §405(g), however, Nichole Medical "must have complied with (1) a nonwaivable requirement of presentation of ***any*** claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive." *Cathedral Rock*, 223 F.3d at 359 (emphasis added); *see also Ringer*, 466 U.S. at 617 ("[T]he exhaustion requirement of §405(g) consists of a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary' and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant.") (internal citations omitted). "'[A]ll aspects of [Nichole Medical's] claim for benefits should be *channeled* first into the administrative process which Congress provided for the determination of claims for benefits.'" *Fanning*, 346 F.3d at 395 (quoting *Ringer*, 466 U.S. at 614).

Moreover, Nichole Medical is not exempt from this exhaustion requirement simply because the claims arising under the Act are not within the jurisdiction of the Secretary. *See Salfi*, 422 U.S. at 765 ("Plainly [the purposes for exhaustion] have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act.").[§§§§]

---

[‡‡‡‡] Nichole Medical avers that (i) it exhausted all claims that it was required to under the Act; and (ii) there is no administrative procedure to obtain review of state law claims for damages. Appellant's Brief, pp. 10-16. Additionally, Nichole Medical argues that the "scope of the administrative proceedings was limited to a determination on claims for benefits, *i.e.*, whether benefits should be paid, and if so, in what amount" and, therefore, it was not required to exhaust its claims. *Id*. at 9-10.

[§§§§] *See, e.g. Kaiser*, 347 F.3d at 1115 ("And, while the administrative action may in some sense be futile for [Appellant] (if the administrative process cannot provide the damages the [Appellant] seek[s]), the administrative exhaustion of [Appellant's] claims would still serve the purposes of exhaustion and not be futile in the context of the system."); *Shalala*, 529 U.S. at 24 ("At a minimum, however, the matter must be presented to the agency prior to review in a federal court.");  Id. at 23 ("After the action

To conclude otherwise would allow any party to avoid the Act's administrative procedures for reviewing the Secretary's determinations simply by restyling their argument as something different. *See Cathedral Rock*, 223 F.3d at 363. Accordingly, Nichole Medical improperly advances an action based on unexhausted claims that "arise under" the Act. *See Kaiser*, 347 F.3d at 1116 n.4 (9th Cir. 2003) ("[A]ll inextricably intertwined claims must first be raised in an administrative process. In that process, the agency, with the benefit of its experience and expertise, can resolve whatever issues it can, limiting the number of issues before judicial review (and limiting review on those issues according to the appropriate standard of deference).").

Without a final agency decision on Nichole Medical's claims, the district court lacks jurisdiction to review this action. *See* 42 U.S.C. §405(h). Because §§1331 and 1332 jurisdiction is barred and the prerequisites of §405(g) have not been satisfied, the district court properly determined that it was without subject matter jurisdiction to entertain Nichole Medical's state law claims.

## B.    Official Immunity for Medicare Contractors

In the alternative, the district court also dismissed Nichole Medical's action for failing to state a claim for which relief may be granted because it found TriCenturion and NHIC were entitled to official immunity. Our review of the district court's grant of a motion to dismiss for failure to state a claim is plenary. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "In considering whether a complaint should have been dismissed for failure to state a claim upon which relief can be granted, [this Court] must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

A Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be

---

has been [channeled through the agency], the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under §405(g) has adequate authority to resolve any statutory or constitutional content that the agency does not, or cannot, decide . . . ."); *Kaiser*, 347 F.3d at 1116 n.4 (The agency "may make a determination that it is without authority to decide and grant the . . . right to obtain judicial review. . . . Such determinations would satisfy presentment and exhaustion, and permit [courts] to hear claims [inextricably intertwined with claims arising under the Act] . . . .").

proved. *Morse*, 132 F.3d at 906. Though Nichole Medical's complaint need not set forth detailed allegations, it must provide the grounds for its entitlement to relief which requires more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On appeal, TriCenturion and NHIC assert that, "as Medicare contractors—acting on behalf of the Secretary and performing functions under their contract with CMS—and because the complaint alleges only state-law tort claims, [Appellees] are entitled to official immunity." Appellees' Brief, p. 17. Nichole Medical argues that "government contractors who engage in illegal conduct have no claim to immunity" and, therefore, official immunity should not be extended to Appellees.[*****] Appellant's Brief, pp. 18-22.

Nichole Medical's argument is unpersuasive. TriCenturion and NHIC, as Medicare contractors, are entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties. *Westfall v. Erwin*, 484 U.S. 292, 300 (1988); *see also* 42 C.F.R. §421.5(b) (Medicare contractors "act on behalf of the CMS in carrying out certain administrative responsibilities that the law imposes"); *Midland Psychiatric Association.*, 145 F.3d at 1003-4 (Medicare contractors are government agents because they are "[u]nder contract with the Secretary of Health and Human Services, [and] do the work of the Government on the Secretary's behalf.").

Under the Act, Appellees had discretion to suspend payments to recoup monies they believed had been overpaid to suppliers. *See* 42 C.F.R. §405.371. Appellees were discharging that discretionary duty when they withheld benefits to recoup the perceived overpayments to Nichole Medical. *See id*. Since Nichole Medical is seeking damages purportedly

---

[*****] Putting aside the fact that an agency should be permitted, in the first instance, to determine whether its agents acted outside of their statutory authority, the plain language of the implementing regulations provides Appellees with the authority to withhold payments to entities furnishing services or items under the Act. *See* 42 C.F.R. §405.371. Appellees were authorized to suspend payments when they possessed reliable information that an overpayment had been made to Nichole Medical even if additional information was needed for a final determination. *See id*. at (a)(1). Appellees were also authorized to offset or recoup Medicare payments if they determined that Nichole Medical had been overpaid. *See id*. at (a)(3). The substance of Appellees' findings which prompted the withholdings was never found to be insufficient. In fact, though his inquiry was found improper on appeal, the ALJ found that 22 of the 39 claims were improperly paid and actually did result in overpayments made to Nichole Medical.

arising from the exercise of Appellees' discretion to withhold benefits they are seeking damages for the exercise of discretion that is easily within the outer perimeter of Appellees' official duties. *See id*.

Accordingly, the district court properly found that Appellees are entitled to immunity and dismissed Nichole Medical's complaint. *See Bodimetric*, 903 F.2d at 488 ("Congress apparently did not differentiate between the respective abilities of public and private agencies to serve as fiscal intermediaries, 42 U.S.C. §1395h(a), we see no reason to allow claimants to proceed against private agencies when they clearly cannot proceed against federal agencies.").

## IV.  CONCLUSION

For the forgoing reasons, we conclude that the district court properly granted Appellees motions under Fed R. Civ P. 12(b)(1) and (6) and we will therefore affirm its decision.