**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2429
_____

ALBERT M. ROBINSON,
                                        Appellant

v.

STATE OF NEW JERSEY MERCER COUNTY VICINAGE-FAMILY DIVISION;
MS. SANDRA L. TERRY; MR. DOUG MECKEL; MS. SUE REGAN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-11-cv-06139)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 15, 2013

Before:  RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: February 15, 2013)
_____

OPINION
_____

PER CURIAM

        The pro se appellant, Albert Robinson, seeks review of the District Court order

that dismissed his complaint and denied several pending motions as moot.  We will

affirm in part, vacate in part, and remand for further proceedings.

I.

Robinson, a Florida resident, filed a complaint in which he claimed that the preparation and execution of a final restraining order (FRO) violated his constitutional rights and otherwise amounted to tortious behavior.[1] Named as defendants were: 1) the Family Division of the Superior Court of New Jersey, Mercer Vicinage; 2) Sandra Terry, the manager/director of the Family Division; 3) Susan Regan, the trial court administrator for Mercer Vicinage; and 4) Douglas Meckel, the team leader of the Domestic Violence segment of the Family Division. Robinson alleged that the defendants, acting in concert, were induced to file a false New Jersey FRO, which they backdated and otherwise modified to resemble an order from 1990. The FRO was entered into the National Instant Criminal Background Check System (NICS) in 2008; Robinson, who had long since departed New Jersey, became aware of the outstanding order only after he attempted to purchase a weapon in Florida. At the time, Robinson was advised by the Florida Department of Law Enforcement that he was "not eligible to purchase a firearm" so long as the FRO was active. Robinson's attempt to dissolve the FRO was successful and largely without incident.

---

[1] Because this case was disposed of at the dismissal stage, we accept as true all well pleaded allegations in the complaint and draw all reasonable inferences in Robinson's favor. See Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). The operative "complaint" in this suit is the first amended complaint, ECF No. 18; Robinson does not appear to have sought or received permission from the Court to file his second amended complaint, ECF No. 37, as required by Fed. R. Civ. P. 15(a)(2). See also Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) (noting that an amended complaint supersedes the original).

2

Despite the ease with which Robinson addressed the outstanding FRO, he suspected that something more sinister was at work. At the time the FRO was entered into NCIS, Robinson was locked in an acrimonious civil suit in Texas. His investigation into the source of the FRO uncovered various irregularities, such as missing and inconsistent records. Because of the "over abundance of corruption in the state of New Jersey," and because the defendants "ha[d] previously converted records at the request of persons unknown in order to discredit me or my political family," Robinson concluded that the FRO was "created and timed to discredit, or most likely prevent, [his] testimony in the [Texas] cases," a link he aimed to prove "[t]hrough e-discovery in the instan[t] case." Amd. Compl. ¶¶ 32-33. Robinson noted that the FRO had several secondary effects, such as depriving him of his rights under the Second Amendment, harming his relationship with his adult daughter, and damaging his reputation.

On the basis of these allegations, Robinson asserted several counts against the defendants under both state and federal law. The federal claim invoked constitutional violations under 42 U.S.C. § 1983, while the remaining causes of action sought redress for state-law defamation, intentional infliction of emotional distress, appropriation of name, fraud, negligence, and nuisance torts. Robinson requested compensatory, punitive, and injunctive relief.

After a lengthy motions practice – during which Robinson claimed to be "entitled to representation by the United States Attorneys," pursuant to 25 U.S.C. § 175 – the District Court granted the defendants' motion to dismiss and denied Robinson's

3

outstanding motions as moot. The Court cited two bases for its decision: 1) Eleventh Amendment immunity and 2) the Rooker-Feldman[2] doctrine, which limits the subject-matter jurisdiction of the federal courts with regard to the review of certain state-court judgments. See Robinson v. State of N.J., Mercer Cnty., Family Div., No. 11-6139, 2012 WL 1656974, at *1-3 (D.N.J. May 10, 2012). This timely appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review. Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 347 (3d Cir. 2012); Chester Cnty. Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 810-11 (3d Cir. 1990). Although pro se submissions are to be construed liberally, pro se litigants "still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., No. 10–4710, ___ F.3d ___, 2013 WL 57895, at *3-4 (3d Cir. Jan. 7, 2013).

## III.

A.     Eleventh Amendment Immunity

Robinson challenges the District Court's decision to dismiss claims against the Family Division and the individual defendants in their official capacities as barred by Eleventh Amendment Immunity. He contends that those defendants are not the "arm of the State." But in Chisolm v. McManimon, 275 F.3d 315 (3d Cir. 2001), we observed that the New Jersey State Judicial Unification Act, N. J. Stat. §§ 2B:10-1 to 2B:10-9, led

---

[2] D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

4

"the State of New Jersey [to] assume[] certain judicial costs and related liabilities of the [Mercer County] Vicinage." Id. at 320. Although Robinson stresses factors of locality, the Vicinage was, as of 2008, clearly a part of the State of New Jersey; thus, both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment. Cf. Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240 (3d Cir. 2005) (determining that the First Judicial District of Pennsylvania was not "merely a local entity" but was instead a Commonwealth entity enjoying Eleventh Amendment protection). Furthermore, despite Robinson's contentions to the contrary, 18 U.S.C. § 925A does not represent an abrogation of Eleventh Amendment immunity and a congressional authorization of suits against states. See MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 503 (3d Cir. 2001) (discussing limited methods by which Eleventh Amendment immunity can be abrogated by Congress). The statute plainly allows for a person wrongly denied a firearm (due to certain factors) to "bring an action against the State or political subdivision responsible for providing the erroneous information . . . *for an order directing that the erroneous information be corrected or that the transfer be approved.*" 18 U.S.C. § 925A (emphasis added). While allowing for a court to award costs, the law does not contemplate a private action for damages. Accord Eibler v. Dep't of Treasury, 311 F. Supp. 2d 618, 620 n.2 (N.D. Ohio 2004).

5

Hence, the claims against the Family Division and the official-capacity defendants[3] were properly dismissed.

B.    Rooker-Feldman

Remaining are Robinson's claims against the defendants in their individual capacities.  Robinson maintains that the Rooker-Feldman doctrine does not bar those claims because, as he continues to assert, the original order granting the FRO was forged, and thus there is no "state court order" for the federal courts to improperly review. Although it relies on a questionable central theory, Robinson's broader argument has merit.

The Rooker-Feldman doctrine "precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments' because such appellate jurisdiction rests solely with the United States Supreme Court." Madera v. Ameriquest Mortg. Co. (In re Madera), 586 F.3d 228, 232 (3d Cir. 2009) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006)).  Relying solely on authority from before 2005, the District Court concluded that the doctrine served to bar review of claims "inextricably intertwined" with a state court's decision in a judicial proceeding.  See, e.g., FOCUS v. Allegheny Cnty. Ct. Com. Pls., 75 F.3d 834, 840 (3d Cir. 1996).  But in 2005, the Supreme Court decided

---

[3] Robinson's first amended complaint names all of the defendants in their official capacities; only defendant Meckel is named in his individual capacity as well.  For the purposes of our opinion today, we construe his filing liberally to also levy claims against Terry and Regan in their individual capacities, as this apparent defect would easily be remedied by Robinson if he sought leave to further amend from the District Court.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), which clarified anew that Rooker-Feldman was a rule of *narrow* application. See, e.g., id. at 284. In the wake of Exxon, we observed that "caution is now appropriate in relying on our pre-Exxon formulation of the Rooker-Feldman doctrine."[4] Gary v. Braddock Cemetery, 517 F.3d 195, 200 n.5 (3d Cir. 2008). More recently, we held that "there are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (internal alternations, quotations omitted).

In the case at bar, the District Court determined that "in order to grant Plaintiff the relief that he requests, the Court would have to determine that this state court decision [granting the FRO] was entered erroneously." Robinson, 2012 WL 1656974, at *3. We disagree. For one, Robinson may not be a "state court loser" at all; the "fraudulent" order about which he complains was *successfully* lifted. But regardless, Robinson is not asking for federal courts to reverse the FRO or to modify its terms. Rather, he seeks damages

---

[4] The District Court also relied on Marks v. Stinson, 19 F.3d 873, 886 n. 11 (3d Cir. 1994); Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J. Police Dep't, 973 F.2d 169, 177 (3d Cir. 1992); and Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992). Many of these cases were cited, too, in the defendants' motion to dismiss, and are mentioned in their appellate brief. We renew the call to approach our pre-Exxon formulation of Rooker-Feldman, contained in these cases, with caution.

from entities whom he claims acted unlawfully in creating and entering the FRO. That his success in this federal suit would call the state-court judgment into question is not, post-Exxon, enough to preclude federal jurisdiction. "[W]hen the source of the injury is the defendant[s'] actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Great W., 615 F.3d at 167. This extends to some cases where the federal plaintiff claims that the state judgment was procured by fraud, misrepresentation, or other improper means, as it the case here. Id. at 168 (citing McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006)).

Accordingly, we agree with Robinson that Rooker-Feldman does not bar his claims. We will therefore vacate the judgment of the District Court to this extent.

C.    Representation by an Assistant United States Attorney Under 25 U.S.C.
       § 175

Robinson renews his argument that he should have been represented below by the United States Attorney's Office under 25 U.S.C. § 175. That statute, which has not been amended since 1893, reads: "[i]n all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity." We have not had occasion to address this law in a published opinion. However, the unanimous weight of authority suggests that the duty of representation contained therein is discretionary, not mandatory. See Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 482 (10th Cir. 1975); Siniscal v. United States, 208 F.2d 406, 410 (9th Cir.

8

1953).  While Robinson claims Cherokee ancestry, it is undeniable that this suit does not involve interests particular to American Indians or Tribes in any way.  Nor does the discretionary duty of § 175 override the general test for appointment of counsel under the in forma pauperis statute, 28 U.S.C. § 1915(e)(1), under which we find no independent abuse of discretion by the District Court.  See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993) (articulating factors to be used in deciding to appoint counsel).  Accordingly, appointment of counsel, either in general or under § 175, was not required.

D.      Remaining Claims

Because the District Court dismissed Robinson's claims under Rooker-Feldman and the Eleventh Amendment, it did not reach the merits of Robinson's federal claims against the individual defendants, nor did it determine whether it would exercise supplemental jurisdiction over Robinson's state-law claims.[5]  While we can affirm the judgment on any ground apparent from the record, see OSS Nokalva, Inc. v. European Space Agency, 617 F.3d 756, 761 (3d Cir. 2010), we believe it best for the District Court to address those remaining claims in the first instance.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court in part, but will vacate in part and remand the claims against the individual defendants in

---

[5] We need not decide now whether Robinson's remaining state claims might also have been brought under the District Court's diversity jurisdiction.

9

their personal capacities to the District Court. Our opinion today does not preclude the resolution of the defendants' motion to dismiss on an alternative basis.